**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Timothy G. SMITH,
Defendant-Appellant.**

No. 85–2333.

United States Court of Appeals,
Tenth Circuit.

July 16, 1986.

James K. Bredar (Robert N. Miller, U.S. Atty., with him on brief), Asst. U.S. Atty., Denver, Colo., for plaintiff-appellee.

Frank R. Courbois (Rick Chew, Durango, Colo., and Fred L. Staggs, Oklahoma City, Okl., with him on brief), Oklahoma City, Okl., for defendant-appellant.

Before HOLLOWAY, Chief Judge, and BARRETT and SEYMOUR, Circuit Judges.

BARRETT, Circuit Judge.

Timothy G. Smith (Smith) appeals from his sentence following a jury verdict of guilty to charges of possession with intent to distribute marijuana in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B), importation of marijuana in violation of 21 U.S.C. §§ 952(a) and 960(a) and (b)(2), and smuggling goods into the United States in violation of 18 U.S.C. § 545.

### Facts

In keeping with its duty to monitor the nation's borders for smuggling activities, the Customs Service has employed Service Detection Systems specialists who monitor radar screens at Federal Aviation Administration (F.A.A.) control facilities throughout the southwestern United States to detect smuggling by aircraft. On April 10, 1985, at 8:54 p.m., Service Detection Systems Specialist Ronald O'Neill observed a target on his radar screen at the F.A.A., Albuquerque, New Mexico, Control Center. The radar target was observed to be heading north in the vicinity of Reserve, New Mexico, about 113 nautical miles north of the Republic of Mexico. Specialist O'Neill determined that the target aircraft was not in radio contact with the F.A.A. controllers and that the plane's transponder was not in operation. A transponder is an electronic device which, when in operation, emits a signal permitting "tracking" by another electronic device. Drawing on his experience, O'Neill determined that the aircraft was not in the vicinity of an airport, that the airplane likely had been in flight for some time, and that it was flying at a low altitude in order to avoid radar detection. Specialist O'Neill was aware that the area

around Reserve, New Mexico, is well known to the Customs Service for flights involving illegal smuggling by aircraft. The so-called "Reserve Corridor" extends from Reserve, New Mexico, for more than 100 miles south into the Republic of Mexico. As an aircraft flies north in the "corridor" approaching Reserve, it must gain altitude in order to fly over the mountains north of Reserve. When this occurs, the airplane becomes a "target" on the F.A.A. radar screen. O'Neill telephoned airports in the general area and F.A.A. control facilities in adjacent areas to determine whether an airplane had recently become airborne in the Reserve, New Mexico, area. The responses were negative.

The combination of prior detections and matters known from experience led O'Neill to suspect that the "target" was an aircraft attempting to evade radar contact; O'Neill then determined that an attempt should be made to intercept the aircraft. O'Neill contacted Customs Service interceptor aircraft and crews at Albuquerque, New Mexico, and Phoenix, Arizona. The Albuquerque interceptor aircraft and its three member crew, consisting of Customs Service Air Officer Arturo Haran (Haran), Air Officer Ward Olson (Olson) and Customs Air Officer and Pilot Gary Gran (Gran), intercepted the "target" aircraft at about 10:02 p.m. near Farmington, New Mexico. O'Neill's radar screen had "tracked" the target aircraft continually to that point following its first radar sighting near Reserve. The interceptor aircraft made actual visual contact with the Smith aircraft near Farmington, New Mexico, when the lights on the Smith aircraft suddenly appeared. The Albuquerque interceptor aircraft was then joined by the Phoenix, Arizona, Customs Service aircraft. Both followed the Smith aircraft to the Durango/La Plata County, Colorado, Airport, where they observed it approach and land.

The Phoenix aircraft maintained radar and electronic contact with the Smith airplane while the Albuquerque Customs Service aircraft landed at the Durango airport three or four minutes after the Smith air-

craft had landed. The Phoenix aircraft, with its radar and electronic contact maintained on the Smith aircraft while flying around the airport, directed the Albuquerque aircraft to the Smith airplane which had been parked on the southwest end of the public tie-down area. Customs Officers Haran and Olson climbed out of their airplane and proceeded to the Smith aircraft in the darkness. Haran carried an M–16 rifle and a flashlight. He testified that as he approached the target aircraft, identified as a 1978 Cessna Turbo 310 twin-engine, his first concern was for his safety and that of Officer Olson in determining whether there were any people inside the Smith airplane. Officer Haran had investigated more than 200 smuggling cases prior to this occasion and 90 percent of them had involved Customs Service air interceptions and interdiction; further, of those 200 cases, 95 percent had proven to be drug smuggling flights. (R., Vol. III, pp. 126–129.)

Officer Haran believed that there might be smugglers aboard the Cessna aircraft. He decided to locate the plane's occupants. He stepped onto the airplane's left wing, flashlight and rifle in hand, and looked into the cockpit. The plane's engines were still hot. The plane had not been tied down. While searching for occupants, Officer Haran, with the use of the landing lights of the Customs Service aircraft, detected some boxes in the cabin compartment of the Smith airplane. He suspected that the boxes contained contraband. Upon further view he "[d]etected some marijuana debris between the boxes and the plastic that they were wrapped with...." *Id.* at 143. Officer Haran then proceeded with his M–16 and flashlight to climb up on the right wing of the Smith airplane in order to determine whether anybody was hiding behind the curtains in the cabin compartment. *Id.* With the use of his flashlight, he again observed the boxes. Officer Haran then looked through the window on the right side of the cabin compartment of the suspect plane. He detected open boxes containing marijuana which was entrapped be-

tween the outer surface of the boxes and clear plastic with which the boxes were wrapped. Officer Haran did not observe any occupants of the Smith airplane. At no time had Officer Haran entered the Smith aircraft. His observations had been made by viewing from outside of the aircraft. After Officer Haran alerted Officer Olson of his detection of marijuana, the two officers then conducted a search of the hanger and parking lot areas for suspects. Soon they were joined by local law enforcement officers.

The Smith airplane was towed to a location near the airport service building. Officers Haran and Olson then spoke by phone with Assistant United States Attorney William Pharo in Denver, Colorado, following which they picked the door lock on the Smith airplane, entered it and discovered a large amount of marijuana.

Thereafter, the Customs officers learned from persons working at the airport that the suspect aircraft was owned by Appellant Smith. They prepared an affidavit and sought a search warrant for Smith's local residence, his pick-up truck which was seen departing the airport shortly after the suspect airplane landed, and the airplane itself. The search warrant was issued by United States Magistrate West and subsequent searches were undertaken. The subsequent search of the suspect aircraft disclosed 639¼ pounds of marijuana, a Mexican coin, cans and bottles containing Smith's fingerprints, a flight jacket with "M.G. Smith" stenciled on it, and a flight bag containing Smith's passport. Smith was arrested and subsequently indicted.

Smith filed a motion to suppress evidence which was denied. During the course of trial, Smith objected to the evidence seized from his airplane. His objections were overruled.

**Appellate Contentions**

On appeal, Smith contends that the district court erred in (1) denying him a *Franks v. Delaware*, 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978) evidentiary hearing to determine the truthfulness of the allegations of the Affidavit for Search Warrant and the legality of a prior warrantless search of his aircraft after he had made a substantial preliminary showing that the "plain view" probable cause allegation resulted from a prior warrantless trespass, seizure and search of the aircraft, (2) denying him an evidentiary hearing to determine the legality of a warrantless intrusion onto and into the aircraft, and in failing to require the Government to meet its burden of proving the legality of the prior warrantless intrusions, which were violations of his reasonable expectation of privacy resulting in the "plain view" observations relied on in the Affidavit for Search Warrant, and (3) admitting at trial tangible and intangible evidence seized pursuant to a search warrant which issued on the basis of prior illegal intrusions, seizures and searches and/or from false and misleading averments contained in the Affidavit for Search Warrant.

**Our Disposition**

**I.**

**The Warrantless Search and Seizure**

We hold that the initial warrantless search of the Smith "target" airplane at the Durango, Colorado, airport was a valid search conducted by Officers Haran and Olson based upon the existence of probable cause and exigent circumstances. Thus, all subsequent seizures effected from the airplane were valid. We observe that none of the items seized pursuant to a search warrant on April 11, 1985, from Smith's residence and pickup truck were introduced in evidence at trial; thus, no prejudice resulted to Smith in terms of admission of fruit of an illegal search and seizure that day.

■ Officer Haran was legally upon the wing of the Smith aircraft when it was first detected parked at the Durango airport in order to determine whether it was occupied by smugglers who may have been armed and dangerous. Thus, the marijuana observed by Officer Haran within the cabin compartment was in "plain view." Objects within the plain view of an officer, who has a right to be in a position to have

such a view, are subject to seizure. *United States v. Gay*, 774 F.2d 368 (10th Cir. 1985). The district court did not err in denying Smith's Motion to Suppress. When reviewing a denial of a motion to suppress, the appellate court must consider the evidence presented at trial in the light most favorable to the Government. *United States v. Rios*, 611 F.2d 1335 (10th Cir. 1979).

■ The "probable cause" justifying a warrantless search is identical with that required to justify issuance of a search warrant. In *Illinois v. Gates*, 462 U.S. 213, 235, 238–239, 103 S.Ct. 2317, 2330, 2332, 76 L.Ed.2d 527 *reh'g. denied*, 463 U.S. 237, 104 S.Ct. 33, 77 L.Ed.2d 1453 (1983), the Supreme Court carefully identified the "probable cause" standard to be used in reviewing search warrant applications:

> Finely tuned standards such as proof beyond a reasonable doubt or by a preponderance of the evidence, useful in formal trials, have no place in the magistrate's decision.

>     \*    \*    \*    \*    \*    \*

> [T]he task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, ... there is a fair probability that contraband or evidence of a crime will be found in a particular place. And the duty of a reviewing court is simply to ensure that the magistrate had a "substantial basis for ... conclud[ing]" ... that probable cause existed.

In *United States v. Lopez*, 777 F.2d 543, 551 (10th Cir.1985), we observed:

> Probable cause is measured against an objective standard. The facts and circumstances must warrant a prudent man in believing that an offense has been or will be committed. *United States v. Salinas-Calderon*, 728 F.2d 1298 (10th Cir.

1984). More specifically, probable cause must be evaluated in relation to the circumstances as they would have appeared to a prudent, cautious and trained police officer. *United States v. McCormick*, 468 F.2d 68, 73 (10th Cir.1972), *cert. denied*, 410 U.S. 927, 93 S.Ct. 1361, 35 L.Ed.2d 588 (1973).

■ Even if probable cause exists to conduct a warrantless search, such as here, still such a search is unlawful as violative of the Fourth Amendment [1] unless justified by consent to search, search incident to arrest, or exigent circumstances. *United States v. Jacobsen*, 466 U.S. 109, 104 S.Ct. 1652, 80 L.Ed.2d 85 (1984); *Arkansas v. Sanders*, 442 U.S. 753, 99 S.Ct. 2586, 61 L.Ed.2d 235 (1979); *Mincey v. Arizona*, 437 U.S. 385, 98 S.Ct. 2408, 57 L.Ed.2d 290 (1978); *Schneckloth v. Bustamonte*, 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973); *United States v. Espinosa*, 782 F.2d 888 (10th Cir.1986); *United States v. Gay, supra; United States v. Tabor*, 722 F.2d 596 (10th Cir.1983).

■ The basic aspects of the "exigent circumstances" exception are that (1) the law enforcement officers must have reasonable grounds to believe that there is immediate need to protect their lives or others or their property or that of others, (2) the search must not be motivated by an intent to arrest and seize evidence, and (3) there must be some reasonable basis, approaching probable cause, to associate an emergency with the area or place to be searched.

In *Arkansas v. Sanders*, 442 U.S. 753, 99 S.Ct. 2586, the Supreme Court discussed the Fourth Amendment and exceptions to its warrant requirements:

> These [exceptions to the warrant requirement] have been established where it was concluded that the public interest required some flexibility in the applica-

---

1. The Fourth Amendment of the Constitution of the United States provides:

    The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not

be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the person or things to be seized.

tion of the general rule that a valid warrant is a prerequisite for a search. *See United States v. Martinez-Fuerte*, 428 U.S. 543, 555 [96 S.Ct. 3074, 3081, 49 L.Ed.2d 1116] (1976). Thus a few "jealously and carefully drawn" exceptions provide for those cases where the societal costs of obtaining a warrant, such as a danger to law officers or the risk of loss or destruction of evidence, outweigh the reasons for prior recourse to a neutral magistrate.... But because each exception to the warrant requirement invariably impinges to some extent on the protective purpose of the Fourth Amendment, the few situations in which a search may be conducted in the absence of a warrant have been carefully delineated and "the burden is on those seeking the exemption to show the need for it." *United States v. Jeffers*, 342 U.S. 48, 51 [72 S.Ct. 93, 95, 96 L.Ed. 59 ] (1951).... Moreover, we have limited the reach of each exception to that which is necessary to accommodate the identified needs of society.

442 U.S. at pp. 759, 760, 99 S.Ct. at pp. 2590, 2591.

**Exigent Circumstances and Plain View**

In the instant case the trial court denied defendant's motion to suppress. Appellant Smith contended that Officer Haran did not have probable cause or exigent circumstances when he invaded Smith's property, i.e., the wings of his airplane while the airplane was parked at the Durango airport.

Officer Haran testified that when he and Officer Olson approached the Smith aircraft in the darkness only a few minutes after it had landed, they (the officers) were concerned about their safety if the Smith airplane was occupied. Based on this legitimate concern under the circumstances, Officer Haran conducted the brief and limited investigative search for occupants. In the course thereof, Officer Haran observed the marijuana contained in boxes inside the compartment of the Smith airplane. Thus, it constituted contraband in plain view subject to seizure. We reject Smith's contentions that when Officers Haran and Olson approached the Smith aircraft at the Durango airport, they did not have probable cause to search the aircraft, and that reliance on the "plain view" doctrine was a pretext. We reject Appellant Smith's contention that Officer Haran could not have identified the contents of the plastic-wrapped cardboard boxes without opening the containers. There is substantial evidence otherwise.

■ The legality of the actions of Officers Haran and Olson subsequent thereto in entering the Smith aircraft without a search warrant following Officer Haran's "plain view" of the marijuana from the outside of the aircraft must stand or fall on the validity of exigent circumstances justifying Officer Haran's initial intrusion onto the wings of the Smith aircraft. Given the circumstances, i.e., the darkness of night, an isolated airfield, lack of knowledge about the occupants, owners or users of the Smith aircraft, knowledge that the airplane had probably traveled north from the Republic of Mexico under suspicious circumstances, and concern that the airplane may have been occupied by a person or persons armed and dangerous, we hold that it was not "unreasonable" for Officer Haran to climb onto the Smith airplane wings without a search warrant. Once the contraband was lawfully identified in "plain view" by Officer Haran it was subject to seizure, together with any other contents associated therewith.

In *United States v. Owens*, 782 F.2d 146 (10th Cir.1986), we recognized the "protective sweep" exception to the warrant requirement of the Fourth Amendment: A protective sweep is a quick and cursory viewing to check for other persons who might present a security risk; as such, it is appropriate where the officers reasonably perceive an immediate danger to their safety. Officer Haran testified about such a concern as he approached the Smith aircraft parked at the Durango Airport and as he proceeded to climb onto the aircraft's wings to search for occupants.

*Coolidge v. New Hampshire,* 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971) recognized that the seizure of an object in plain view is consistent with the objective that searches be as limited as possible:

[T]he seizure of an object in plain view is consistent with the second objective, [that searches be as limited as possible] since it does not convert the search into a general or exploratory one. As against the minor peril to Fourth Amendment protections, there is a major gain in effective law enforcement. Where, once an otherwise lawful search is in progress, the police inadvertently come upon a piece of evidence, it would often be a needless inconvenience and sometimes dangerous—to the evidence or to the police themselves—to require them to ignore it until they have obtained a warrant particularly describing it.

403 U.S. at pp. 467, 468, 91 S.Ct. at p. 2039.

In *Michigan v. Summers,* 452 U.S. 692, 101 S.Ct. 2587, 69 L.Ed.2d 340 (1981), the Supreme Court recognized that under *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), police may make limited intrusions on an individual's privacy involving search and seizure if the balance weighs in favor of crime prevention and detection and in securing the law enforcement officer's safety. In the case at bar, it is implicit that the trial court, in denying Smith's motion to suppress, applied such a test and found that the governmental interests in crime detection and securing the safety of the law enforcement officials outweighed Smith's privacy rights.

*United States v. Amuny,* 767 F.2d 1113 (5th Cir.1985) involved a warrantless search of the interior of an airplane. There, as here, a Customs Service Officer climbed onto the wing of a suspect aircraft and while leaning across the nose of the airplane looked through the front windshield. He then observed several packages wrapped in brown paper and encased in plastic. Thereafter, without a search warrant, the officers opened the doors of the airplane and entered. They removed and opened the packages. The court rejected the Government's contention that the warrantless search of the airplane was justified on the ground that Custom Service Officer Castro had climbed on the plane and had observed contraband in plain view. The Fifth Circuit rejected this contention because *and only because* the Government had not articulated a "[l]egitimate right to climb onto and walk upon the wing, lean across the nose of the plane, and peer through the front windshield and into the interior of the craft." *Id.* at 1125. The court held that Agent Castro had trespassed upon the appellant's legitimate expectation of privacy in the airplane because the only purpose of Agent Castro's action was to gain an otherwise unavailable view of the interior of the airplane. It was uncontradicted that the appellant and two companions, occupants of the airplane, had embarked therefrom as state and federal officers approached the aircraft with their weapons drawn. Appellant and his companions were thereafter arrested, handcuffed and held some distance from the aircraft. The court observed that prior thereto there was no probable cause for belief that the airplane contained contraband. That holding is in distinct contrast to the instant case. No contention was made in *Amuny* that Officer Castro climbed on the aircraft's wing in order to determine whether the airplane was occupied in keeping with the right to protect himself and others. *Amuny's* search was conducted during daylight hours and after the occupants had fled from the airplane. Furthermore, there were no facts creating more than "mere suspicion that the plane had crossed the border." *Id.* at 1123.

## II.

## Contention of Error in Denying Evidentiary Hearing on Validity of Affidavit for Search Warrant

Appellant Smith contends that the trial court erred in denying his Motion to Suppress and a *Franks v. Delaware,* 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978) evidentiary hearing to determine the truthfulness of the allegations of the Affidavit for Search Warrant and the legality of the

prior warrantless search of his airplane after he had made a substantial showing that the "plain view" probable cause allegation resulted from a prior warrantless trespass, search and seizure of the aircraft.

Under I., *supra,* we have held that when the Customs officers approached the Smith aircraft soon after it had landed at the Durango airport, they were armed with probable cause that it was used in drug smuggling from the Republic of Mexico, and, further, that when Officer Haran trespassed upon the aircraft's wings searching for possible occupants of the Smith aircraft, exigent circumstances existed. This, in turn, justified Officer Haran's flashlight "search" of the compartment area of the airplane for occupants, during which Officer Haran observed marijuana in the compartment area in "plain view." Based on these circumstances, we have held that the subsequent warrantless seizure of the contraband and other contents associated therewith was valid.

■ The actual seizure, however, was not effected until after a search warrant had been issued. The Government argues that because of the mobility of aircraft, Officer Haran, already armed with probable cause to believe that the airplane had been flown from south of the border in a drug smuggling operation, was entitled to trespass onto the airplane's wings in search of occupants, during which time he observed the marijuana in "plain view." On the basis of these circumstances, the Government contends, and we agree, that the Customs officers were not required to obtain a warrant to search the Smith airplane and to seize the marijuana and other contents associated therewith.

The seizure of the marijuana together with a Mexican coin, a box containing Mexican archeological artifacts, cans and bottles containing appellant Smith's fingerprints, a flight jacket with "M.G. Smith" stenciled thereon, and a flight bag containing Smith's passport was effected some eight hours after the Smith aircraft had landed at the Durango airport and after the Customs officers had obtained a search warrant. Accordingly, it is the Government's position that even should the initial warrantless search be held invalid, the evidence seized was nevertheless admissible because it was seized pursuant to a valid search warrant.

In a pre-trial Motion to Suppress, renewed at trial, Smith contended that the search warrant was invalid because the affidavit executed in support thereof contained deliberately false and misleading representations and material inaccuracies and omissions. Smith asserted that the search conducted pursuant to the warrant was unlawful because it resulted from a prior illegal search by the Customs officers and because Officer Haran's "plain view" allegation was a deliberate falsehood. Appellant Smith contends that he was denied a hearing mandated by *Franks v. Delaware, supra,* to go behind the face of the affidavit executed by Officer Haran to test the truthfulness of matters asserted.

The only matter filed in support of the Motion to Suppress was an affidavit executed by Smith's counsel. In *Franks v. Delaware* the Court held that to mandate an evidentiary hearing challenging the truthfulness of factual statements contained in an affidavit for a search warrant, the challenger's attack must be more than conclusory and supported by more than a desire to cross-examine, accompanied by an offer of proof, including affidavits or sworn or otherwise reliable statements of witnesses. In the case at bar, appellant Smith did not present any affidavits of witnesses in conjunction to his Motion to Suppress. Instead, Smith's attorney submitted an affidavit of counsel alleging that the falsehoods could be established.

The trial court conducted an extensive hearing and ruled/concluded that none of the matters presented by counsel for appellant Smith in the nature of omissions (the Haran affidavit did not relate that he and Officer Olson had broken into the Smith airplane after moving it to a lighted area) and deliberate falsehoods (that there were openings in the cabin curtains of the Smith airplane through which Officer Haran ob-

served marijuana during his pretextual "plain view"), gave rise to a *Franks v. Delaware* hearing. The court found that even had the magistrate known of all of the omissions set forth in defense counsel's affidavit, still the warrant would have issued, (R., Vol. II, p. 40), and that the Haran affidavit in support of the search warrant was sufficient. *Id.* at 45. The trial court, in denying the motions, found/concluded that "Even assuming, without arguing the point, that this initial search that was done without a warrant was improper and illegal, the question is whether the affidavit, excluding that information, is sufficient to issue the warrant ... there is just simply no question. There would have been sufficient information which would give the magistrate ability to make a decision that there is a fair probability that contraband or evidence of a crime would be found at a particular place." *Id.* at pp. 29, 30. We agree.

■ The trial court did not err in finding/concluding that there was sufficient probable cause independent of the evidence observed/seized as a result of Officer Haran's "plain view" discovery and the subsequent warrantless entry of the Smith aircraft by Officers Haran and Olson to support the issuance of the search warrant.

We hold that the trial court did not err in denying Smith's Motion to Suppress and a *Franks v. Delaware* evidentiary hearing.

**Conclusion**

The district court did not err in denying Smith's Motion to Suppress and a *Franks v. Delaware* evidentiary hearing.

We hold that the warrantless search and seizure of the Smith airplane was not violative of the Fourth Amendment. The "plain view" doctrine applies. The intrusion onto the Smith airplane wings was fully justified in keeping with the right of police to secure their safety. In the process, Officer Haran observed the marijuana in "plain view," justifying the subsequent warrantless seizure.

Even were we to assume, as the trial court did, that the initial warrantless entry upon and into the Smith aircraft was violative of the Fourth Amendment, still there was sufficient independent probable cause to support the issuance of the search warrant by the magistrate.

"Reasonableness" is the overriding test of compliance with the Fourth Amendment. *Zurcher v. Stanford Daily*, 436 U.S. 547, 98 S.Ct. 1970, 56 L.Ed.2d 525 (1978). Appraising the conduct of the Customs Service officers in the light of this record, we agree with the trial court's determination that no Fourth Amendment violation occurred.

WE AFFIRM.

SEYMOUR, Circuit Judge, concurring.

I concur generally in the judgment in this case, and I agree with the *Franks v. Delaware* analysis in part II of the opinion. I write separately because I believe the initial, warrantless search of the airplane was justifiable on grounds more narrow than those relied upon by the majority in part I.

As the majority correctly holds, Officer Haran's peering through the window of the plane and the subsequent warrantless entry are supported by both probable cause and exigent circumstances. The suspicious circumstances surrounding the plane's flight, such as the absence of lights, the use of the Reserve Corridor, and the landing at an isolated airfield, warrant a reasonable belief that the plane contained contraband. However, I do not agree with the majority that exigent circumstances existed because of the officers' concern for their safety. In denying the motion to suppress evidence, the district court made no finding that the officers were fearful or acted to protect their lives or well-being. The testimony of the officers that they harbored such concerns, as well as the evidence that Officer Haran stood on the wing of the plane when he first viewed its interior through the window, did not come to the attention of the district court until trial. It is not within our province as an appellate court to make fact findings. Nor is it necessary to do so to uphold the warrant-

less entry, because exigent circumstances were inherent in the mobility of the airplane under the facts of this case. *See United States v. Finefrock,* 668 F.2d 1168, 1171–72 (10th Cir.1982). The exigency of the airplane, coupled with the existence of probable cause, are sufficient to support the warrantless entry without reference to safety concerns.

For these reasons, I would affirm.