**UNITED STATES of America,**
*Plaintiff,*

v.

**Kevin Scott JACKSON, Darren Michael Jackson, Defendants.**

No. 01–40035–01/02–SAC.

United States District Court,
D. Kansas.

March 20, 2002.

James A. Brown, Office of United States Attorney, Topeka, KS, for Plaintiff.

Melody J. Evans, Office of Federal Public Defender, Donald R. Hoffman, Jason P. Hoffman, Hoffman & Hoffman, Topeka, KS, Benjamin N. Casad, Casad & Strong Law Firm, Kansas City, KS, for Defendants.

## MEMORANDUM AND ORDER

CROW, Senior District Judge.

Defendants Kevin Scott Jackson and Darren Michael Jackson have each been charged with five counts relating to the manufacture and possession of controlled substances. This case comes before the court on the following motions: Kevin Scott Jackson's motion to dismiss Count 5 (Dk.31), and Darren Michael Jackson's motion to suppress evidence (Dk.44). Each

co-defendant has joined in the other defendant's motion, and has standing to do so.

**Facts**

On April 27, 2001, at approximately 9:07 p.m., the Shawnee County Sheriff's office was called by a citizen in the 6800 block of S.W. Windsong, complaining of a strong chemical odor he believed to be anhydrous ammonia in the area. Deputy Daniel Lotridge responded to 6801 Windsong, spoke to the complainant, and determined that the odor was anhydrous ammonia. Based upon his training and experience,[1] Deputy Lotridge recognized the odor as anhydrous ammonia when he first smelled it, and knew that anhydrous ammonia is a substance commonly used as a leading component in the manufacture of methamphetamine. He could not immediately pinpoint the source of the odor, so radioed dispatch for additional units to assist him in that task.

Deputy Lotridge noticed a car in the driveway, and spoke to the driver, who identified herself as Mary Farr. A small child was in the back seat of the car. Deputy Lotridge stated that the driver seemed nervous and evasive, but she gave him her name and told him who lived in the adjacent residence. Deputy Lotridge did not notice that she demonstrated any physical symptoms of having been exposed to anhydrous ammonia. Soon thereafter, a male came out of the residence at 6803 Windsong, whom Mary Farr identified as her boyfriend, Darren Jackson. Darren Jackson got into the car and the three left.

Deputy Lotridge thereafter determined, by walking around the area, that the odor was coming from the adjacent residence at 6803 S.W. Windsong. The complainant stated that Darren and Kevin Jackson lived in that residence.

Deputies Rice, Lopez, and Peterson arrived thereafter. Through a kitchen window, Deputy Kiley Rice saw clear plastic tubing on the floor in the kitchen and two "bongs" in the kitchen area, and so informed Deputy Lotridge. The tubing was significant to Rice and Lotridge because they knew such tubing was commonly used in the filtration process in manufacturing methamphetamine. Deputy Lotridge testified that prior to going inside the residence, they saw four dogs they believed to be pit bulls inside.

Deputy Lotridge then knocked on the front door. Kevin Jackson opened the door, stepped out and quickly closed the door behind him. As he did so, Deputy Lotridge was hit by a "very strong smell" of anhydrous ammonia. Deputies stated that Kevin Jackson was very nervous, his voice was shaking and cracking, his hands were trembling, and that he was uncooperative and evasive in that he tried to avoid answering their questions. He was lucid and conversant, however. Deputy Lotridge testified that defendant did not demonstrate any ill effects from anhydrous ammonia when he talked with him. Deputy Rice testified that defendant Kevin Jackson may have cleared his throat a few times during their conversation, but showed no other adverse effects of exposure to any chemical.

Deputy Lotridge told defendant Jackson of the odor and of his suspicion that defendant was manufacturing methamphetamine inside the residence, and asked Kevin Jackson whether he had been using cleaning agents. Defendant replied that he had been cleaning with common cleaning agents such as "409." Deputy Lotridge was familiar with the smell of 409

---

1. Deputy Lotridge not only had training regarding the manufacture of methamphetamine, as a law enforcement officer, but also had been exposed to the odor of anhydrous

ammonia while working on a farm where it was used as fertilizer, and was able to distinguish its odor from that of other chemicals.

and other household cleaning agents, did not believe the smell could have been from any such item, and believed that defendant was lying. The deputies could hear movement in the residence after Kevin Jackson answered the door, but did not know whether the noise was from the dogs or from other persons inside.

Deputy Lotridge then requested consent to search the residence. Defendant Kevin Jackson stated that the residence belonged to his brother, Darren, and his girlfriend, Mary Farr, but that he would not consent to a search. The deputy then asked whether anyone else was in the residence, and defendant replied that there was not. Deputies then contacted their supervisor, who instructed them to make sure there were no other persons in the residence for safety reasons, and to secure the residence until a search warrant could be obtained. Deputy Lotridge testified that anhydrous ammonia has a very detrimental long-term side effect to the lungs and possibly the eyes.

Deputies then entered the house without consent and without a warrant, observed an apparatus in the bathroom, which is where they believed most of the fumes were coming from, but stated that the odor burned their eyes and lungs so badly that they had to leave to get some fresh air within minutes of having entered. Deputies reentered the residence within the minute, completed their sweep of the residence, determined that no one was inside, then secured the perimeter of the house until a warrant was obtained. Kevin Jackson was placed in custody pending the issuance of a search warrant.

At approximately 11:13 p.m., Deputy John Schrock obtained a search warrant for the residence, which sought evidence relating to the offenses of methamphet-

amine possession, methamphetamine manufacture, and possession of drug paraphernalia, along with related records. Neither deputy Lotridge nor Deputy Rice participated in the search of the residence that night. The search, pursuant to the warrant, revealed a powder containing methamphetamine and pseudoephedrine, and other items commonly associated with the manufacture of methamphetamine.

## I. MOTION TO DISMISS COUNT 5

Defendant contends that the statute upon which Count 5 is based is void for vagueness. Count 5 of the Indictment alleges that the defendants "did knowingly, willfully, and unlawfully, while manufacturing and attempting to manufacture a controlled substance, to-wit: methamphetamine, a Schedule II controlled substance, create a substantial risk of harm to human life, in violation of Title 18 United States Code, Section 858, and Title 18, United States Code, Section 2."[2]

Defendant alleges that the phrase "a substantial risk of harm to human life" is unconstitutionally vague, both facially and as applied. 21 U.S.C. § 858 provides:

Whoever, while manufacturing a controlled substance in violation of this subchapter, or attempting to do so, or transporting or causing to be transported materials, including chemicals, to do so, creates a substantial risk of harm to human life shall be fined in accordance with Title 18, or imprisoned not more than 10 years, or both.

The Tenth Circuit has recently held, in examining an allegation that another criminal statute was unconstitutionally vague:

" '[T]he void for vagueness doctrine requires that a penal statute define the

---

**2.** Although the indictment refers to 18 U.S.C. § 858, the citation should be to 21 U.S.C. § 858 instead.

criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement.'" *United States v. Corrow,* 119 F.3d 796, 802 (10th Cir.1997) (quoting *Kolender v. Lawson,* 461 U.S. 352, 357, 103 S.Ct. 1855, 1858, 75 L.Ed.2d 903 (1983)). "[V]agueness challenges to statutes which do not involve First Amendment freedoms must be examined in light of the facts of the case at hand. One to whose conduct a statute clearly applies may not successfully challenge it for vagueness." *Village of Hoffman Estates,* 455 U.S. at 495 n. 7, 102 S.Ct. 1186, 71 L.Ed.2d 362 (internal citations and quotations omitted); *Corrow,* 119 F.3d at 803.

*United States v. Day,* 223 F.3d 1225, 1228 (10th Cir.2000). In *Day,* the Tenth Circuit concluded that, as applied to Day, a statute was not unconstitutionally vague because evidence produced at trial demonstrated that Day had knowledge of the illegality of his activities, and thus could reasonably understand that his contemplated conduct was proscribed.

The government contends that defendants lack standing to challenge the statute on grounds of vagueness because the statute clearly applies to defendants' conduct. Some support for this proposition is found in Tenth Circuit cases which hold that where the evidence produced at trial demonstrates that a defendant is "one to whose conduct [the] statute clearly applies" that defendant cannot successfully challenge the statute for vagueness. *See Day,* 223 F.3d at 1228; *United States v. El–Hajjaoui,* 227 F.3d 1274, 1277 (10th Cir.2000); *United States v. Saffo,* 227 F.3d 1260, 1270 (10th Cir.2000), *cert. denied,* 532 U.S. 974, 121 S.Ct. 1608, 149 L.Ed.2d 473 (2001). Cases which the court has re-

viewed, however, have applied this rule based upon facts developed at trial, rather than in the context of examining pretrial motions where the facts are not fully developed. To apply this rule here would appear to be putting the cart before the horse. The government's argument that defendants lack standing is unpersuasive, and the merits of defendants' challenge will therefore be considered.

Defendant has the burden to show that the statute is unconstitutionally vague, as applied to him. *See Day,* 223 F.3d at 1228.

Defendant alleges that the statute is vague in failing to define, standardize, or identify four factors: risk, harm, persons and scienter. Specifically, defendant alleges that the statute fails to give reasonable persons notice of what "substantial risk" means, of what types of "harm" are encompassed within the statute, of which persons are intended to be protected, and of the degree, if any, of scienter required.

Neither party's brief cites any cases which have addressed vagueness challenges to this statute. Yet counsel who raises the issue here recently and unsuccessfully raised this identical issue before Judge Rogers in *United States v. Evans,* 2001 WL 1013322 (D.Kan. Aug. 7, 2001).[3] In *Evans,* the sole reported case to address this issue, J. Rogers rejected defendant's invitation to dismiss a count on the grounds that § 858 was unconstitutionally vague in these words:

The court by its rulings and instructions in the trial limited the application of § 858 to a risk originating from "the process of manufacturing methamphetamine or the storage, transportation or mixing of chemicals to manufacture methamphetamine." "Substantial" was defined as "real and significantly large." "Harm" was defined as referring to physical damage. The in-

___

**3.** Counsel first mentioned this case at oral argument.

structions also stated that the risk must be experienced by a person other than the defendant.

In light of these instructions and the commonly understood meaning of the terms within the statute, the court does not believe the conduct proscribed by the statute could be easily confused by people or that the statute could be arbitrarily enforced by the government. *See Panther v. Hames*, 991 F.2d 576 (9th Cir.1993) (negligent homicide statute using term "substantial risk" is not unconstitutionally vague).

Defendant emphasizes the absence of a mens rea element in the statute. The court acknowledges that the statute contains no expressly stated mens rea element. Nor did the court list such an element in the instructions regarding Count 4, which were not objected to by counsel. The court further acknowledges that the presence of a mens rea element is considered a factor which militates against vagueness. *Saffo*, 227 F.3d at 1270 n. 8.

■ In this instance, however, we do not believe the Constitution requires that defendant know he was causing a substantial risk of human life to be found in violation of § 858. We compare this case with *U.S. v. Holland*, 810 F.2d 1215 (D.C.Cir.) *cert. denied*, 481 U.S. 1057, 107 S.Ct. 2199, 95 L.Ed.2d 854 (1987) where the circuit court found that it was not necessary in a prosecution under 21 U.S.C. § 845a (now § 860) to prove that the defendant knew he was within 1000 feet of a school when he distributed drugs. The court stated:

It is easily concluded here that Congress' heightened interest in protecting children from both the indirect and direct perils of drug traffic amply supports its decision not to require a showing of mens rea of the proximity of a school. A reasonable person would know that drug trafficking is subject to

stringent public regulation because it can seriously threaten the community's health and safety, particularly as it relates to the community's heightened concern for the health, safety and welfare of its children.

810 F.2d at 1223–24. *See also, U.S. v. Pruitt*, 763 F.2d 1256, 1261–62 (11th Cir. 1985) *cert. denied*, 474 U.S. 1084, 106 S.Ct. 856, 88 L.Ed.2d 896 (1986) (knowledge of minor's age is not an element of violation of 21 U.S.C. § 845–now § 859–prohibiting distribution of drugs to persons under the age of 21, citing analogous statutes). Here, defendant knew manufacturing or attempting to manufacture methamphetamine was illegal. It does not offend due process if Congress's regulation of this antisocial conduct does not require proof that defendant knew his illegal activity created a substantial risk of harm to human life. *See U.S. v. Pitts*, 908 F.2d 458, 461 (9th Cir.1990) (quoting, *U.S. v. Falu*, 776 F.2d 46, 50 (2nd Cir.1985)); *see also, U.S. v. Cook*, 76 F.3d 596, 602 (4th Cir.) *cert. denied*, 519 U.S. 939, 117 S.Ct. 320, 136 L.Ed.2d 235 (1996) (interpreting 21 U.S.C. § 861(a)(3) and finding presumption of a knowledge element is not applicable where statute criminalizes conduct that is not otherwise innocent); *U.S. v. Chin*, 981 F.2d 1275, 1279–81 (D.C.Cir.1992) *cert. denied*, 508 U.S. 923, 113 S.Ct. 2377, 124 L.Ed.2d 281 (1993) (same).

2001 WL 1013322, *2.

The vagueness challenge in this case is based upon the identical allegations that counsel raised and the court rejected in *Evans*. The court denies defendant's challenge to the constitutionality of § 858 based upon the same rationale stated above. The offense has been defined with sufficient definiteness that ordinary people can understand what conduct is prohibited, and in a manner that does not encourage arbitrary and discriminatory enforcement.

The court is able to adequately define any novel terms in its jury instructions, which defense counsel will have an opportunity to submit.

## II. MOTION TO SUPPRESS (Dk.44).

Defendant Darren Michael Jackson contends that the warrantless search of the residence he rented is in violation of his Fourth Amendment right to be free from unreasonable searches and seizures. He further contends that the warrant obtained after the warrantless entry into his residence lacks probable cause because it was based upon evidence illegally obtained during the warrantless search of his residence.

### A. Warrantless Entry—Exigent Circumstances

 "It is a 'basic principle of Fourth Amendment law' that searches and seizures inside a home without a warrant are presumptively unreasonable." *Payton v. New York,* 445 U.S. 573, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980). Therefore, absent consent or exigent circumstances, police may not enter a citizen's residence without a warrant. *Id.* at 590, 100 S.Ct. at 1382. When the police do seek to enter a home without a warrant, the government bears the burden of proving that sufficient exigency exists. *United States v. Parra,* 2 F.3d 1058, 1064 (10th Cir.), *cert. denied,* 510 U.S. 1026, .114 S.Ct. 639, 126 L.Ed.2d 597 (1993). "In assessing whether this burden has been met, we evaluate the circumstances as they would have appeared to prudent, cautious and trained officers." *Parra,* 2 F.3d at 1064 (internal quotations omitted).

 "[T]here is no absolute test for the presence of exigent circumstances because such a determination depends on the unique facts of each controversy." *United*

*States v. Wicks,* 995 F.2d 964, 970 (10th Cir.), *cert. denied,* 510 U.S. 982, 114 S.Ct. 482, 126 L.Ed.2d 433 (1993) (internal quotations omitted). However, in *United States v. Smith,* 797 F.2d 836 (10th Cir. 1986), the Tenth Circuit outlined the basic aspects of the 'exigent circumstances' exception as:

(1) the law enforcement officers must have reasonable grounds to believe that there is immediate need to protect their lives or others or their property or that of others, (2) the search must not be motivated by an intent to arrest and seize evidence, and (3) there must be some reasonable basis, approaching probable cause, to associate an emergency with the area or place to be searched."

797 F.2d at 840. The court will use this framework in determining the present question.

 The sole exigent circumstance asserted by counsel for the government, both in his brief and at oral argument, is the officers' concern for the safety of others.[4] (Dk. 47 p. 17–18). Officers may make a warrantless arrest or conduct a warrantless search if they believe that their own lives or the lives of others are at risk. *Warden v. Hayden,* 387 U.S. 294, 298–99, 87 S.Ct. 1642, 18 L.Ed.2d 782 (1967); *United States v. Smith,* 797 F.2d 836, 840 (10th Cir.1986); *Cf. Minnesota v. Olson,* 495 U.S. 91, 100, 110 S.Ct. 1684, 109 L.Ed.2d 85 (1990) (exigent circumstances are "hot pursuit of a fleeing felon, or imminent destruction of evidence, or the need to prevent a suspect's escape, or the risk of danger to the police or to other persons inside or outside the dwelling.") (citations omitted).

---

4. The court thus does not examine whether destruction of evidence or the officer safety rationale warranted the entry into the residence.

Based upon the facts admitted at the evidentiary hearing, the court finds that the search was not motivated by an intent to arrest and seize evidence. The warrantless entry and protective sweep were limited in scope to ensure the safety of the residents, if any. A full search of the residence was not conducted until after the search warrant was obtained. The second factor is thus met.

The government focuses its argument upon the third factor, *i.e.*, that there must be some reasonable basis, approaching probable cause, to associate an emergency with the area or place to be searched. 797 F.2d at 840. To meet this burden, the government relies upon cases holding that distinctive odors may be sufficient to establish probable cause for a search warrant. *See e.g., Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit*, 28 F.3d 1388 (5th Cir.1994) (finding distinctive odors, detected by those qualified to know them, may alone establish probable cause); *United States v. Johns*, 948 F.2d 599, 603 (9th Cir.1991) (finding officer's detection of a strong odor which they associated with the illicit manufacture of methamphetamine, strongest near defendant's storage locker, sufficient for search of storage locker), *cert. denied*, 505 U.S. 1226, 112 S.Ct. 3046, 120 L.Ed.2d 913 (1992); *United States v. Sweeney*, 688 F.2d 1131 (7th Cir.1982) (finding detection of an odor can give rise to probable cause to issue a search warrant for residence where affiant is qualified to know, recognize and identify the odor and the odor is sufficiently distinctive to identify a forbidden substance); *United States v. McKeever*, 906 F.2d 129, 132 (5th Cir.1990).

The Tenth Circuit has often addressed the sufficiency of probable cause based upon smells in the context of vehicle searches, *see e.g., United States v. Vasquez–Castillo*, 258 F.3d 1207 (10th Cir. 2001); *United States v. West*, 219 F.3d 1171, 1178 (10th Cir.2000)(officer's detection of smell of drugs in car can be an independently sufficient basis for probable cause); *United States v. Wald*, 216 F.3d 1222, 1228 (10th Cir.2000) (officer's detection of odor of raw methamphetamine would be sufficient probable cause to search vehicle's trunk, but odor of burnt methamphetamine would not); *United States v. Downs*, 151 F.3d 1301, 1303 (10th Cir.1998) (officer's detection of the smell of raw marijuana sufficient probable cause to search vehicle's trunk). The Tenth Circuit has rarely addressed the same in the distinctly different context of a residence search. *See e.g., United States v. Scroger*, 98 F.3d 1256 (10th Cir.1996) (officer's detection of odor consistent with methamphetamine manufacturing when defendant opened door, holding a hot plate with fingertips stained rust colored, constituted probable cause); *United States v. Shovea*, 580 F.2d 1382 (10th Cir.1978) (defendant's purchase of precursor of methamphetamine, his elusive trip to airport with suitcase, his flight to another city, and strong odors emanating from residence to which the suitcase was brought constituted probable cause for issuance of warrant.)

■ Here, the smell of anhydrous ammonia was strong enough that a neighbor detected it and complained of it. Deputies determined by walking around the yard that the odor was coming from defendants' residence, and were hit with a strong odor of anhydrous ammonia when defendant Kevin Jackson opened the front door. Based upon the deputies' stated experience and training, coupled with their testimony about the distinctive odor of anhydrous ammonia and Kevin Jackson's demeanor, the court finds that the officers had probable cause to believe that he was engaged in criminal activity.

This finding does not, however, meet the government's burden to show that the dep-

uties had reasonable grounds to believe that there was immediate need to protect the lives of others, or that there was some reasonable basis to associate an emergency with the defendants' residence.

Various circumstances posed by drug labs have been held to constitute exigency sufficient to justify a warrantless entry. *See e.g., Scroger,* 98 F.3d at 1259 (likelihood of destruction of evidence); *United States v. Carr,* 939 F.2d 1442 (10th Cir. 1991) (strong odor of drug (PCP) emanating from motel room, "commotion, shuffling and movement inside the motel room," and sound of toilet flushing constituted exigent circumstances); *United States v. Erb,* 596 F.2d 412, 418 (10th Cir.1979) (strong odor of drug used in illegal methamphetamine laboratory emanating from residence, coupled with unexpectedly early arrival of suspect which led officers to believe laboratory was being dismantled and evidence destroyed, and officers' personal knowledge that suspect was a "dangerous person" and that laboratories had potential to cause explosions constituted exigent circumstances), *cert. denied,* 444 U.S. 848, 100 S.Ct. 97, 62 L.Ed.2d 63 (1979); *see also United States v. Spinelli,* 848 F.2d 26 (2d Cir.1988) (officers' failure to follow knock and announce statute in exercising warrant was justified by exigent circumstances due in part to the violent and flammable nature of methamphetamine, which defendant was believed to have been producing in his home); *United States v. Whitten,* 706 F.2d 1000, 1014 (9th Cir.1983) (risk of explosion of a methamphetamine lab in operation presented an exigent circumstance that would have justified an immediate warrantless search).

■ The testimony in this case establishes that the officers reasonably believed that there may have been other persons in the residence. Although Kevin Jackson denied the presence of others in the resi-

dence, deputies heard noises inside the residence when speaking with Kevin Jackson at his front door, and believed Kevin Jackson to be lying to them about his use of 409, justifying an inference that he could have been lying about the presence of others as well.

The testimony fails to demonstrate, however, that the officers had reasonable grounds to believe that there was an immediate need to protect the lives of others. The sole relevant testimony was that anhydrous ammonia could have some negative long term health effects upon a person's lungs or eyes, and that deputies believed methamphetamine was being manufactured inside the residence. No testimony about any danger of explosion, the volatile nature of methamphetamine, or other immediate need to evacuate the premises was offered. *Compare United States v. Jasinski,* 1989 WL 104819, *2 (E.D.Pa. Sept. 7, 1989)(finding exigent circumstances where the officers and agents testified to the readily identifiable smell emanating from the premises and to the danger of explosion with which the officer was personally familiar), *aff'd* 908 F.2d 962 (3d Cir.1990), *cert. denied,* 498 U.S. 1099, 111 S.Ct. 994, 112 L.Ed.2d 1078 (1991).

Additionally, testimony was uncontradicted that the defendants, both of whom had been in the residence, did not appear to be in any immediate physical distress. Deputy Lotridge saw Darren Jackson leave the house and enter the car by which the deputy was then standing, but did not notice that Jackson exhibited any ill effects of the anhydrous ammonia. Similarly, deputies testified that Kevin Jackson, who had been inside the residence throughout the time Deputy Lotridge attempted to determine the source of the odor, displayed no ill effects when he answered the door. No testimony was introduced to support a finding that the length of delay

required to seek and obtain a search warrant would have posed any danger to persons who may have remained in the house.

The government cites no cases holding that similar facts constitute reasonable grounds to believe that there is immediate need to protect the lives of others, and the court has found none. Although the circumstances were not the product of police manipulation or abuse, the warrantless entry of defendant's residence was not justified on the basis asserted by the government.

## B. Probable Cause for Search Warrant

Defendants allege that because no exigent circumstances existed to justify the warrantless entry into the residence, any information learned during that illegal entry must be omitted from the determination of whether the subsequent search warrant was based upon probable cause. Defendants further allege that the affidavit lacks any basis for probable cause absent the illegally obtained information. The government contends that all evidence and information were legally seized or obtained, that the search warrant is supported by probable cause with and without the information obtained during the warrantless entry into the residence, and that even if the warrant lacks probable cause, it is saved by the good faith *Leon* exception.

### General Law

■ Generally, a search must be made pursuant to a warrant based on probable cause. U.S. Const. amend. IV. The reviewing court gives "great deference" to the issuing judge's determination of probable cause, for it is a determination based on common sense. *United States v. Finnigin,* 113 F.3d 1182, 1185 (10th Cir. 1997). The issuing judge must make a practical, common-sense determination from the totality of the circumstances presented whether there is a fair probability that contraband or evidence of a crime will be found in a particular place. *Illinois v. Gates,* 462 U.S. 213, 238, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983). The issuing judge is expected to draw reasonable inferences from the affidavits. *See United States v. Edmonson,* 962 F.2d 1535, 1540 (10th Cir. 1992).

■ The reviewing court will uphold that determination if the supporting affidavits provide a substantial basis for finding that probable cause existed. *Gates,* 462 U.S. at 236, 103 S.Ct. 2317; *Finnigin,* 113 F.3d at 1185. "In applying the test enunciated in *Gates,* this Court has stated that the 'affidavit' should be considered in a common sense, nontechnical manner ..." *Edmonson,* 962 F.2d at 1540 (quoting *United States v. Massey,* 687 F.2d 1348, 1355 (10th Cir.1982) (citation omitted)).

■ "[P]robable cause is a fluid concept—turning on the assessment of probabilities in particular factual contexts—not readily, or even usefully, reduced to a neat set of legal rules." *Gates,* 462 U.S. at 232, 103 S.Ct. 2317. The Supreme Court has found it sufficient to say that probable cause is more than a mere suspicion, but considerably less than what is necessary to convict someone. *United States v. Ventresca,* 380 U.S. 102, 85 S.Ct. 741, 13 L.Ed.2d 684 (1965); *see Wicks,* 995 F.2d at 972 ("The existence of probable cause is a 'common-sense standard' requiring 'facts sufficient "to warrant a man of reasonable caution in belief that an offense has been committed."'") (quoting *United States v. Mesa–Rincon,* 911 F.2d 1433, 1439 (10th Cir.1990)) (quoting *Brinegar v. United States,* 338 U.S. 160, 174, 69 S.Ct. 1302, 93 L.Ed. 1879 (1949)).

### Analysis

The affidavit reveals that the following information included in the affidavit was known to the affiant before entry into the residence was made: 1) a citizen/neighbor

had called regarding a strong chemical odor in the neighborhood; 2) deputies responded and determined that the odor was coming from defendants' residence; 3) deputies saw clear plastic tubing on the floor of the kitchen and two "bongs"; 4) deputies were hit with the strong odor of anhydrous ammonia when defendant opened the door and heard noises coming from the residence; 5) deputies, believing there was a methamphetamine lab in the residence, asked about the odor, and defendant stated that he had been cleaning with things such as "409."

■ The sole fact set forth in the search warrant application which relates to the deputies' warrantless entry into the residence is: "Deputies attempted to clear the residence and were overcome by the anhydrous ammonia and had to leave the residence." (Gvmt.Exh.1, p. 6.) Inclusion of erroneous or unconstitutionally obtained information in a search warrant affidavit does not invalidate the warrant unless the information is critical to the establishment of probable cause. *See United States v. Snow,* 919 F.2d 1458, 1460 (10th Cir.1990).

■ When the information derived from the warrantless search in the present case is redacted, the affidavit in support of the search warrant still supports a finding of probable cause. The facts known to the deputies prior to their warrantless entry into the residence and relayed to the magistrate, taken together with reasonable inferences drawn from them, give rise to a fair probability that contraband or evidence of a crime would be found in the residence. The fact that the deputies entered and were overcome by the anhydrous ammonia goes solely to the strength or concentration of the odor, and was not necessary to the magistrate's conclusion that the affidavit contained facts sufficient to warrant a man of reasonable caution in belief that an offense has been committed.

## Good Faith Exception

■ The court additionally believes that even in the event probable cause were lacking, the officers acted with "objective good faith" in obtaining the warrant from a magistrate and in executing the warrant within its scope, pursuant to *Leon.*

In *United States v. Leon,* 468 U.S. 897, 925, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984), the Supreme Court pronounced "that suppression of evidence obtained pursuant to a warrant should be ordered only on a case-by-case basis and only in those unusual cases in which exclusion will further the purposes of the exclusionary rule." 468 U.S. at 918, 104 S.Ct. 3405. "The engine that drives Fourth Amendment protection is prevention and deterrence." *United States v. McCarty,* 82 F.3d 943, 949 (10th Cir.), *cert. denied,* 519 U.S. 903, 117 S.Ct. 257, 136 L.Ed.2d 183 (1996).

Thus, "where the officer's conduct is objectively reasonable," that is, the officer acts with "objective good faith" in obtaining the warrant from a magistrate and in executing the warrant within its scope, "there is no police illegality and thus nothing to deter." *Leon,* 468 U.S. at 919–21, 104 S.Ct. 3405. It is the "magistrate's responsibility to determine whether the officer's allegations establish probable cause." 468 U.S. at 921, 104 S.Ct. 3405. "In the ordinary case, the officer cannot be expected to question the magistrate's probable cause determination." *Id.* Indeed, there is a " 'presumption created in Leon that when officer relies upon a warrant, the officer is acting in good faith.' " *United States v. McKneely,* 6 F.3d 1447, 1454 (10th Cir.1993) (quoting *United States v. Cardall,* 773 F.2d 1128, 1133 (10th Cir.1985)).

In applying the *Leon* exception, the court understands that the:

> " 'good faith inquiry is confined to the objectively ascertainable question

whether a reasonably well trained officer would have known the search was illegal despite the magistrate's authorization.' ... To answer this 'objectively ascertainable question,' we are to consider 'all of the circumstances,' and assume that the executing 'officers have a reasonable knowledge of what the law prohibits.' "

*United States v. Dahlman*, 13 F.3d 1391, 1397 (10th Cir.1993) (quoting *United States v. Leary*, 846 F.2d 592, 607 (10th Cir.1988) (quoting in turn *Leon*, 468 U.S. at 919, 104 S.Ct. 3405)), *cert. denied*, 511 U.S. 1045, 114 S.Ct. 1575, 128 L.Ed.2d 218 (1994). "[T]he reviewing court must examine 'the text of the warrant and the affidavit to ascertain whether the agents might have reasonably presumed it to be valid.' " *McKneely*, 6 F.3d at 1454 (quoting *United States v. Corral–Corral*, 899 F.2d 927, 932 (10th Cir.1990)).

The determination is not just whether the affidavits contain legally sufficient facts but whether the affidavits are devoid of factual support. *Cardall*, 773 F.2d at 1133. "Thus, 'it is only when [an officer's] reliance was wholly unwarranted that good faith is absent.' " *McKneely*, 6 F.3d at 1454 (quoting *Cardall*, 773 F.2d at 1133). " 'The government, not the defendant, bears the burden of proving that its agents' reliance upon the warrant was objectively reasonable.' " *United States v. Cook*, 854 F.2d 371, 373 (10th Cir.1988) (quoting *United States v. Michaelian*, 803 F.2d 1042, 1048 (9th Cir.1986)), *cert. denied*, 488 U.S. 1006, 109 S.Ct. 788, 102 L.Ed.2d 779 (1989).

The affidavit in the present case is not devoid of factual support, and the court finds that the officers' reliance on the warrant was objectively reasonable.

IT IS THEREFORE ORDERED that Kevin Scott Jackson's motion to dismiss Count 5 (Dk.31) is denied, and that Darren Michael Jackson's motion to suppress evidence (Dk.44) is denied.