BRISCOE, Circuit Judge,
concurring and dissenting.
I agree with the majority’s conclusion that Rhiger has standing to contest the officers’ entry into the residence. However, I disagree that exigent circumstances excused the officers’ warrantless entry. Since entry into the residence was not supported by either a warrant or exigent circumstances, I would conclude the district court erred in denying the motion to suppress and, as a result, I would reverse the conviction and remand for new trial.
As accurately noted by the majority, a warrantless entry into a residence is presumptively unreasonable under the Fourth Amendment. Payton v. New York, 445 U.S. 573, 586, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980). A warrantless entry may be justified, however, where officers believe their own lives or the lives of others are at risk. United States v. Wicks, 995 F.2d 964, 970 (10th Cir.1993). Where the exigent circumstance claimed is protection of the public, the requirements are that (1) law enforcement officers must have reasonable grounds to believe there is an immediate need to protect the public or the public’s property; (2) the search must not be motivated by an intent to arrest and seize evidence; and (3) there must be some reasonable basis, approaching probable cause, to associate an emergency with the area or place to be searched. United States v. Smith, 797 F.2d 836, 840 (10th Cir.1986).
The burden is on the government to show exigency. Wicks, 995 F.2d at 970. In assessing whether this burden has been met, the court evaluates the circumstances as they would have appeared to prudent, cautious, and trained officers. United States v. Scroger, 98 F.3d 1256, 1259 (10th Cir.1996). In reviewing the denial of a motion to suppress, this court accepts as true the trial court’s findings of fact unless they are clearly erroneous, but the ulti *1293 mate determination of reasonableness is a question of law that is reviewed de novo. Wicks, 995 F.2d at 968-69.
Here, the district court found exigent circumstances based on two factors: (1) the danger to the public posed by the manufacturing of methamphetamine; and (2) the need to prevent destruction of the evidence. However, the government did not advance the need to prevent destruction of the evidence as an exigent circumstance and presented no evidence regarding that issue. Instead, the government only advanced the danger to the public as the reason for entry. Therefore, although the need to prevent destruction of the evidence might have given the officers a reason to enter, it was not the reason for entry in this case.
Did the government establish a danger to the public that would justify the war-rantless entry? I would conclude it did not. In deciding the officers’ public safety concerns provided an exigent circumstance sufficient to justify entry, the district court cited United States v. Brock, 667 F.2d 1311 (9th Cir.1982). In Brock, agents surrounded a motor home at a state park, suspecting the manufacture of methamphetamine. An agent smelled chemicals cooking, and another agent saw the defendant dash out of the motor home “gasping for air, as if choking on fumes.” Id. at 1314. The agents entered the motor home and found an operating methamphetamine lab. The district court found exigent circumstances (the smell of methamphetamine, the defendant fleeing the motor home while choking on fumes, the officers’ knowledge of the explosiveness of chemicals used in making methamphetamine, and uncertainty as to whether other occupants might still be in the motor home) supported entry for the safety of the occupants and to prevent an explosion. The Ninth Circuit affirmed the district court’s findings and conclusions.
Brock is typical of cases which have upheld warrantless entry into a residence where methamphetaminé manufacturing is suspected in order to protect the public. See United States v. Cervantes, 219 F.3d 882, 891 (9th Cir.2000) (finding risk of explosion in apartment building constituted emergency justifying entry and there was no need for exigent circumstance analysis); United States v. Wilson, 865 F.2d 215, 216-17 (9th Cir.1989) (finding exigent circumstances existed because of danger of explosion of methamphetamine lab in residential area); United States v. Echegoyen, 799 F.2d 1271, 1278-79 (9th Cir.1986) (finding danger of methamphetamine explosion in remote area with limited firefighting resources justified entry); United States v. Erb, 596 F.2d 412, 417-18 (10th Cir.1979) (finding danger of methamphetamine manufacture combined with danger of destruction of evidence presented exigent circumstances). These cases rely in part upon the explosive nature of the manufacturing process. ' However, in the majority of these cases, there was some actual evidence of an existing danger to the public and that officers acted promptly in entering the residence to assess the danger and prevent harm. See Wilson, 865 F.2d at 216-17 (lab located in residential area and firefighters called to scene advised entry); Brock, 667 F.2d at 1318 (resident leaving house choking on fumes, combined with concern for other residents inside).
In the present case, the government’s reliance upon public safety to support exigency is much less convincing. Although Officer Mallory contended entry was necessary to protect the “public,” it is unclear whom he was seeking to protect. Mallory admitted that the residence was bounded on two sides by open mesa, on one side by an unoccupied garage, and on the other side by a trailer with its occupant known to be absent. Even if there was some *1294 evidence that the public would be endangered by an explosion, the officers’.conduct belies the claim of exigency. Upon deciding a warrantless entry was necessary to protect the public, Mallory and the other officers did not immediately enter the residence, but rather searched for a key so they could enter without damaging the front door. Evidently, protection of the front door took precedence over protection of the public. The entry itself was not effected until approximately thirty njinutes after the decision to enter was made.
While warrantless entry into a residence where methamphetamine manufacturing is occurring has been upheld in other cases on public safety grounds, in this case the danger to the public was known to be minimal and the actions of the' officers in attempting to find a key prior to entry belied any notion there was an emergency requiring immediate entry. By our concluding this entry was justified by exigent circumstances, we are effectively establishing a rule that a warrantless entry into a residence is always justified where methamphetamine is being manufactured. Or, stated another way, we are creating a methamphetamine lab exception to the warrant requirement.
The officers here had sufficient information and adequate opportunity to seek a search warrant prior to entering the residence. Officer Mallory had checked Rhi-ger’s criminal record after the purchase of the 500 grams of iodine, but before the purchase of 500 grams of red phosphorous, and learned that Rhiger had been or was associated with the manufacture of methamphetamine. This information, along with the smell of methamphetamine and the earlier purchase of chemicals and related supplies, provided the officers with sufficient information to seek a warrant. The officers had surrounded the residence and there was no indication they feared the residents might try to escape. They were not concerned that evidence might be destroyed — in fact, it appears that more evidence was being manufactured. It was the middle of the day so obtaining a warrant would not be as difficult as a late-night request.
The government argues that even if the entry was unlawful, the evidence need not be suppressed. According to the government, the evidence was obtained pursuant to a valid search warrant, although the warrant was issued after the initial entry. “Although a search may violate the Fourth Amendment, the exclusionary rule is inapplicable if the evidence inevitably would have been discovered by lawful means.” United States v. Souza, 223 F.3d 1197, 1202 (10th Cir.2000). However, the inevitable discovery exception does not apply to all situations where police have probable cause for a warrant and fail to get one. Rather, the question is the likelihood that a warrant would have been issued and the evidence would have been found independent of the search. Id. at 1204. In determining whether a warrant would have been issued independent of the search, the following factors are helpful: (1) the extent to which the warrant process has been completed at the time those seeking the warrant learn of the search; (2) the strength of the showing of probable cause at the time the search occurred; (3) whether a warrant was ultimately obtained, albeit after the illegal entry; and (4) evidence that law enforcement lacked confidence in their showing of probable cause and wanted to force the issue. Id.
In this case, the search warrant was not issued independently of entry into the residence. Rather, the affidavit in support of the application for the search warrant was based in part on information obtained as a result of the warrantless entry. The inevitable discovery doctrine should not apply if the “agents’ decision to seek the warrant *1295 was prompted by what they had seen during the initial entry, or if information obtained during that entry was presented to the Magistrate and affected his decision to issue the warrant.” Murray v. United States, 487 U.S. 533, 542, 108 S.Ct. 2529, 101 L.Ed.2d 472 (1988).