**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**FEB 26 2004**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

    Plaintiff-Appellee,

v.

DAVID ZOGMAISTER,

    Defendant-Appellant.

No. 03-8005
(D. Wyo.)
02-CR-134-B

---

**ORDER AND JUDGMENT** *

---

Before **BRISCOE, LUCERO,** and **McWILLIAMS,** Circuit Judges.

---

David Zogmaister appeals the district court's denial of his motion to suppress the drugs found by police in his motel room. Zogmaister entered a conditional guilty plea to a charge of firearm possession in furtherance of drug trafficking in violation of 18 U.S.C. § 924(c), preserving his right to appeal the district court's denial of his motion to suppress. On appeal, we consider whether the government has met its burden of demonstrating that exigent circumstances

---

* This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

justified the warrantless search of Zogmaister's motel room.  We **REVERSE**.

**I**

In December 2001, agents with the Wyoming Division of Criminal Investigation ("DCI") received information from confidential informants that Zogmaister had been traveling to Rock Springs, Wyoming for the past several months to sell methamphetamine.  Based on that intelligence, DCI opened a criminal investigation regarding Zogmaister's possible drug dealing activities.  On February 5, 2002, a confidential informant told DCI agents that Zogmaister was staying in Room 219 at the Inn at Rock Springs, that the informant had been in Room 219 with Zogmaister, and that the room contained methamphetamine, heroin, and a firearm.

Rather than pursue a warrant at that time, DCI Agent Craig Jackson and Sweetwater County Deputy Sheriff John Elliot decided to go to the Inn at Rock Springs; there they observed Zogmaister's automobile parked in front of the motel.  A "for sale" sign in the automobile's window listed Zogmaister's telephone number, and the officers hatched a plan to lure Zogmaister out of his room to question him about his suspected drug activity.  After a third officer, DCI Agent Dennis Clamen, arrived at the scene, Agent Jackson called the listed number, purportedly to inquire about the car; he spoke to a male who said he would come out to discuss the matter.  Minutes later, Nicole Ables, Zogmaister's

girlfriend, came out of Room 219 and approached Agent Jackson; he informed her that he was a police officer, and that he needed to discuss an investigation with Zogmaister. In response to the officers' questions, Ables informed them that she and Zogmaister had been staying in the motel for two days, and that there were no firearms in the room.

Following the brief questioning of Ables, the officers led her to the motel room and told her to knock on the door. She did so, announcing that she was with some detectives who wanted to speak to Zogmaister. Between thirty and forty-five seconds elapsed, and Zogmaister opened the door, dressed in long underwear. Ables hurriedly walked through the open door into the room and sat on the bed. The officers followed her immediately, positioning themselves around the room. At no point did the officers ask permission to enter the room, nor did Zogmaister or Ables invite them. Describing their reasons for entering the room, Agent Jackson explained:

> When [Ables] took off across [the room], the fact that the door was open, we just went ahead and entered. For officer safety reasons you've got to get out of that doorway. That is where the funnel of fire comes. If somebody starts a firefight as you are entering a room, from years of tactical experience, you want to get out of that doorway. That's the fatal funnel. That's where officers are killed at. We want to get in.

(3R. at 44–45.)

After entering the room, Agent Jackson asked Zogmaister whether there were any weapons in the room, and Zogmaister answered affirmatively. Agent

-3-

Jackson retrieved the weapon and asked for permission to conduct a more thorough search of the room. Zogmaister granted permission, and a search of the room revealed syringes, a small amount of heroin, 2.25 ounces of methamphetamine, drug paraphernalia, $3,700 in cash, and two stolen revolvers. Zogmaister filed a motion to suppress the evidence uncovered in the search of the motel room, arguing that the search violated his Fourth Amendment right to be free from unreasonable searches and seizures.

In denying Zogmaister's motion to suppress on November 22, 2002, the district court initially based its decision on two conclusions: (1) that Zogmaister lacked a reasonable expectation of privacy, and thus the Fourth Amendment provided him no protection; and (2) that even if Zogmaister had a reasonable expectation of privacy, he consented to the search. On December 13, 2002, the government requested that the district court provide additional factual findings on the subject of exigent circumstances. Specifically, the government requested that the district court find "that Ms. Ables' unexpected entry into the motel room, where the agents had reason to believe narcotics and guns were stored, created an exigent circumstance necessitating the officers warrantless entry into the room to ensure their safety." (1R. at 38.) The district court complied with the government's request in an order issued the same day, adopting verbatim the language suggested by the government and thus finding that exigent

-4-

circumstances justified the government's warrantless search of the motel room.

On appeal, the government concedes that Zogmaister had a reasonable expectation of privacy in his motel room. We accept the concession. The government also concedes, and we agree, that the police lacked consent to enter the motel room. Therefore, the sole contested issue on appeal is whether exigent circumstances justified the government's warrantless search of Zogmaister's motel room. Because we conclude that the government has not met its burden of demonstrating that exigent circumstances existed to enter the room, we **REVERSE**.

## II

In reviewing a denial of a motion to suppress, we are required to "accept the trial court's findings of fact unless they are clearly erroneous." United States v. Carr, 939 F.2d 1442, 1443 (10th Cir. 1991) (quotation omitted). Moreover, "[a] trial court's determinations which rest upon credibility and reasonable inferences will not be set aside unless clearly erroneous." Id. at 1448. We view the evidence in the light most favorable to the government, id. at 1443, but "[t]he ultimate determination of reasonableness under the Fourth Amendment . . . is a question of law which we review de novo." United States v. Ross, 920 F.2d 1530, 1533 (10th Cir. 1990) (quotation omitted).

**A**

In support of the government's concession of the issue, we note that it is beyond dispute that individuals residing in motel rooms generally have a reasonable expectation of privacy and thus receive Fourth Amendment protection. Stoner v. California, 376 U.S. 483, 490 (1964). In nonetheless concluding that Zogmaister lacked a privacy interest in the motel room in which he had been staying, the district court relied on Minnesota v. Carter, 525 U.S. 83 (1998). In that case, the Supreme Court imposed a heightened burden for demonstrating a reasonable expectation of privacy when the defendant's presence in the dwelling was solely for a commercial purpose. Id. at 91; see also United States v. Gordon, 168 F.3d 1222, 1226 (10th Cir. 1999) (applying Carter).

We conclude that Carter is inapplicable to this case. In Carter, the defendant was in a rented apartment for two and one half hours for the exclusive purpose of packing cocaine; moreover, the Supreme Court specifically noted that Carter had not stayed overnight. Carter, 525 U.S. at 90. Thus, Carter provides an exception to the general expectation of privacy when a defendant's presence in a room is solely for commercial purposes; as the government now concedes,[1] that is

---

[1] In its brief, the government states: "A thorough review of the record indicates that the Defendant was a social guest in the motel room at the time the agents entered the room, and therefore had a reasonable expectation of privacy in the room." (Aplt. Br. at 11.)

not the case here. To the contrary, the record reflects that Zogmaister had been residing in the motel room in question for two days.[2]

Because it is clear from the record that Zogmaister's presence in the room was not purely commercial, we hold that Zogmaister had a reasonable expectation of privacy under the Fourth Amendment. Having arrived at that conclusion, we proceed to analyze whether the government has demonstrated the existence of an exception to overcome the general presumption that warrantless searches are unreasonable under the Fourth Amendment.

**B**

A warrantless search is presumptively unreasonable under the Fourth Amendment unless the government can demonstrate the existence of an exception; indeed, "the most basic constitutional rule in the search and seizure area is that exceptions to the warrant requirement must be specifically established, well delineated, and jealously and carefully drawn." United States v. Aquino, 836 F.2d 1268, 1270 (10th Cir. 1988) (quotations omitted). Consent represents one exception to the Fourth Amendment's warrant requirement. United States v. Pena-Sarabia, 297 F.3d 983, 986 (10th Cir. 2002). As a result, if Zogmaister or

---

[2] At the motion to suppress hearing, Agent Jackson was asked, "you don't dispute that Mr. Zogmaister had been staying in that room for at least a day or two?" Agent Jackson replied, "[t]hat's correct. We later substantially verified that." (3R. at 34.)

Ables consented to the officers' entry into the motel room, no violation would have occurred.

In addition to finding initially that Zogmaister lacked a reasonable expectation of privacy, the district court found that Ables consented to the search. Given the government's concession that the officers lacked consent to enter the room,[3] and our review of the record, we are persuaded that the district court erred on this point. Because we also conclude that the government did not have consent to enter Zogmaister's motel room, we are now faced with the interesting prospect of a three-legged stool standing on but one leg. We examine this sole source of support and the only contested issue—whether the government's warrantless entry was justified by exigent circumstances.

Exigent circumstances may justify warrantless searches when: (1) there is probable cause for the search or seizure, and the evidence is in imminent danger of destruction, Cupp v. Murphy, 412 U.S. 291, 294–96 (1973); (2) the safety of law enforcement or the general public is threatened, Warden v. Hayden, 387 U.S. 294, 298–99 (1967); (3) the police are in "hot pursuit" of a suspect, United States v. Santana, 427 U.S. 38, 42–43 (1976); or (4) the suspect is likely to flee before the officer can obtain a warrant, Minnesota v. Olson, 495 U.S. 91, 100 (1990). In

---

[3] In its brief, the government states, "the Government does not believe that the record supports a conclusion that the Defendant impliedly consented to the officers' entry into the room." (Aplt. Br at 11.)

the instant case, the government contends that its warrantless intrusion into Zogmaister's motel room was justified by exigent circumstances—more specifically, that the safety of Agents Clamen, Jackson, and Elliot was threatened.

While we recognize that concerns for officer safety sometimes may produce exigent circumstances that justify a warrantless search, it is the government's burden to demonstrate the presence of those exigencies. United States v. Maez, 872 F.2d 1444, 1452 (10th Cir. 1989). In determining whether the government has met its burden, we "evaluate the circumstances as they would have appeared to prudent, cautious and trained officers." United States v. Cuaron, 700 F.2d 582, 586 (10th Cir. 1983) (quotations omitted).

There is "no absolute test for the presence of exigent circumstances," United States v. Justice, 835 F.2d 1310, 1312 (10th Cir. 1987) (quotation omitted); however, we have provided a general framework for analyzing this type of exigent circumstances claim:

> The basic aspects of the "exigent circumstances" exception are that (1) the law enforcement officers must have reasonable grounds to believe that there is immediate need to protect their lives or others or their property or that of others, (2) the search must not be motivated by an intent to arrest and seize evidence, and (3) there must be some reasonable basis, approaching probable cause, to associate an emergency with the area or place to be searched.

United States v. Smith, 797 F.2d 836, 840 (10th Cir. 1986). We also require that a government assertion of exigent circumstances be "supported by clearly defined

indicators of exigency that are <u>not subject to police manipulation or abuse</u>."

<u>Aquino</u>, 836 F.2d at 1272 (emphasis added).[4]

The three requirements of <u>United States v. Smith</u> are conjunctive; that is to say, the government has the burden of demonstrating each of them in order to overcome the Fourth Amendment's general presumption that warrantless searches are unreasonable. Thus, the government initially must demonstrate that the officers had reasonable grounds to believe that there was an immediate need to protect their lives. To this end, the government points to the informant's testimony that there was a gun in the motel room, the fact that it took between thirty and forty-five seconds for Zogmaister to open the door, and Ables' purportedly sudden entrance into the motel room when Zogmaister opened the door.

Whether these factors in their totality are sufficient to satisfy the first requirement of <u>Smith</u> presents a close question, but we note that we have concluded previously in similar circumstances that concerns for officer safety were not enough to justify a failure to knock and announce.[5] However, assuming

[4] Though <u>Aquino</u> addressed exigent circumstances in the context of evidence in imminent danger of destruction, we conclude that its rationale applies equally to exigent circumstances in the context of concern for the safety of law enforcement or the general public.

[5] In <u>United States v. Stewart</u>, 867 F.2d 581, 584–86 (10th Cir. 1989), officers cited safety concerns for their failure to knock and announce in executing

(continued...)

-10-

arguendo that it was reasonable for the officers to have perceived a generalized danger, the second requirement of Smith creates an additional stumbling block for the government.[6]

According to Smith, exigent circumstances can justify a warrantless search only if the search is "not [] motivated by an intent to arrest and seize evidence." 797 F.2d at 840. Without this requirement, the exigent circumstances exception would constitute a substantial loophole in our Fourth Amendment jurisprudence.

_____

[5](...continued)

their warrant; the officers in Stewart relied on testimony from a confidential informant who had seen the defendant with a gun in the past. While we rejected the officers' justification in Stewart for several reasons, our explanation of what might constitute a sufficient set of facts to justify exigent circumstances on the basis of officer safety is instructive. Citing United States v. Spinelli, 848 F.2d 26 (2d Cir. 1988) as a "good example of a situation where an unannounced entry into a home was justified due to the presence of exigent circumstances," we pointed to the following specific factors in that case: (1) that the officers were aware that the defendant had a history and reputation of violence; (2) that the officers had conducted a lengthy surveillance of the suspect; (3) that they were concerned that the suspect had become aware of their surveillance; and (4) that flammable liquids were at the scene, and the officers were concerned that the defendant would cause an explosion given that he had become aware of their surveillance. Stewart, 867 F.2d at 585–86. Notably, none of those circumstances were present in Stewart, and neither are they present in the instant case. Zogmaister had no violent convictions on his record. The officers' surveillance was relatively short, and they had no reason to think that Zogmaister was aware of it.


[6] We do not address whether the government has met Smith's third requirement, that "there must be some reasonable basis, approaching probable cause, to associate an emergency with the area or place to be searched." Smith, 797 F.2d at 840.

If the government could use the exigent circumstances exception to justify warrantless searches when searches were motivated by an intent to seize evidence, officers could conduct warrantless searches for drugs any time they had reason to believe that the suspect possessed a gun or posed a potential danger. Thus, Smith requires that a warrantless search not be motivated by an intent to search for evidence.

To this point, the officers claim in their depositions that when they accompanied Ables to the motel room, their motivation was simply to speak to Zogmaister outside of his room and had nothing to do with actually searching the room. Of course, no direct evidence runs counter to the officer's testimony; who but the officers could attest to their motivation? Despite the absence of direct evidence to impeach the officers' stated motivations, however, we have grave concerns about the government's offer of proof on this issue.

In our view, two sets of facts in the record militate against the officers' assertions. First, it is undisputed that the officers suspected that the room contained methamphetamine, and moreover, the officers testified that they suspected Zogmaister of dealing the drugs. We consider it unlikely, given these undisputed perceptions on the part of the officers, that the officers' desire to search the motel room for drugs did not influence their decision to enter the room.

In addition to this consideration, we are troubled by the officers' decision to follow Ables into the room given the other choices available to them at that moment in time, any of which would have reduced the threat to their safety rather than increasing it. Agent Jackson testified that when Ables entered the room, he and the other officers followed her because the doorway represented a dangerous funnel of fire. Certainly, that characterization of the doorway made it an area to be avoided at all costs. However, the record reflects that when Ables entered the room, the officers were not in the doorway at all. Instead, when Ables entered, the officers were standing to the side of the door; in their depositions, the officers specifically testified that in their positions to the side of the door, they were "protected . . . by [the] walls"—out of the funnel of fire. (3R. at 45.) Thus, even if we assume that the officers reasonably perceived the doorway to be a dangerous funnel of fire, Ables' entrance into the room put them in no immediate danger.

In fact, the officers had options, each of which would have kept them out of the perceived danger and each of which was less dangerous than the action they ultimately took. Prudence suggests that to avoid the funnel of fire apparently represented by the doorway, a course other than entry into that doorway would have been wise. Other choices were certainly available; the officers could have chosen to obtain a search warrant. Having elected not to do so in the first instance, they could have remained outside of the room and asked Zogmaister to

-13-

speak with them in the hallway. Instead, the officers chose to enter the room and thereby apparently increase their immediate danger. Thus, the result of the officers' action of following Ables into the room without a warrant was not the <u>avoidance</u> of a reasonably perceived danger, but rather the <u>exacerbation</u> thereof.

Despite abundant evidence indirectly suggesting that the officers' actual reason for entering the motel room was ultimately to search the room for the drugs they thought it contained, we are hard-pressed to draw such a conclusion absent direct testimony by the officers themselves. We recognize that such problems of proof might be endemic to <u>Smith</u>'s second requirement given that it mandates an inquiry into the officers' specific motivations. Those problems in mind, we look to <u>Aquino</u>, which requires that exigent circumstances be "supported by clearly defined indicators of exigency that are <u>not subject to police manipulation or abuse</u>." 836 F.2d at 1272 (emphasis added).

Much like the second prong of <u>Smith</u>, the requirement that the government not create its own exigency stems from our concern "that the police not be placed in a situation where they can create the exception, because well-meaning police officers may exploit such opportunities without sufficient regard for the privacy interests of the individuals involved." <u>Id.</u>; <u>see also</u> <u>United States v. Mikulski</u>, 317 F.3d 1228, 1233 (10th Cir. 2003) (counseling against the "manufacture of exigencies"); <u>United States v. Morgan</u>, 743 F.2d 1158, 1163 (6th Cir. 1984)

(noting that in the context of a warrantless arrest, "police officials . . . are not free to create exigent circumstances to justify their warrantless intrusions"); United States v. Allard, 600 F.2d 1301, 1304 n.2 (9th Cir. 1979) ("If exigent circumstances were created, they resulted from the agent's own conduct"). Though motivated by the same concerns as Smith's second prong, the requirement in Aquino is more helpful to us in cases like the one before us because it does not require us to inquire into the officers' motivations, a role better suited for the fact-finder. Rather, the Aquino requirement allows us to evaluate the objective evidence and simply determine whether the indicators of exigency were subject to police manipulation or abuse.

In the instant case, we conclude that even if the officers reasonably perceived that they were in danger, they improperly created their own exigency. From the time they called Zogmaister feigning interest in his car, the officers entirely controlled the action. Once Ables came down to see them in response to their call, the officers walked her back to the motel room, directed her to knock, and did not prevent her from entering the room. The officers' course of action represents a clear example of the government creating its own exigency and thus attempting to circumvent the Fourth Amendment's requirements.

Indeed, "[t]he Fourth Amendment guards against such 'bootstrap' arguments serving as a basis for the warrantless search of a person's home."

-15-

United States v. Anderson, 981 F.2d 1560, 1568 (10th Cir. 1992). Therefore, we conclude that the government has failed to satisfy its burden of demonstrating that exigent circumstances justified the officers' warrantless entry into Zogmaister's motel room.

## III

Accordingly, we **REVERSE**.

Judge McWilliams dissents.

Entered for the Court


Carlos F. Lucero
Circuit Judge

No. 03-8005, United States v. Zogmaister

**BRISCOE,** Circuit Judge, concurring:

I concur in the result but I reach that result by a different route. Judge Lucero concludes the officers "did not prevent [Ables] from entering the room" and thus created their own exigency in an attempt to circumvent the Fourth Amendment. Op. at 15. However, the district court found the officers did not expect Ables to enter the motel room. Specifically, the district court described her entry as "unexpected." ROA, Vol. I, Doc. 39. That factual finding is subject to review only for clear error. See United States v. Scroger, 98 F.3d 1256, 1260 (10th Cir. 1996) (applying clear error standard of review to district court's determination that officers "did not manipulate or abuse the circumstances" to create the exigency); United States v. Carr, 939 F.2d 1442, 1448-49 (10th Cir. 1991) (applying clear error standard of review to district court's finding that, although exigency was foreseeable, critical factors creating exigency were not subject to police manipulation or abuse). Because I cannot conclude the district court's finding was clearly erroneous, I do not agree that the officers created an exigency by not preventing Ables' entry. Rather, I conclude the officers' subsequent entry into the room was not justified by the safety concerns urged by the government.

The "existence of exigent circumstances is a mixed question of law and fact." United States v. Davis, 290 F.3d 1239, 1241 (10th Cir. 2002). The district

court's factual findings are accepted unless they are clearly erroneous, but "the determination whether those facts satisfy the legal test of exigency is subject to de novo review." United States v. Flowers, 336 F.3d 1222, 1228 (10th Cir. 2003). When the purported exigency concerns police officer safety, one basic aspect of the exigent circumstances exception is that "officers must have *reasonable grounds* to believe that there is immediate need to protect their lives." United States v. Smith, 797 F.2d 836, 840 (10th Cir. 1986) (emphasis added). Here, the facts as found by the district court do not establish that the officers had reasonable grounds to believe there was an immediate need to enter the motel room to protect their lives.

The government argues that Ables' unexpected entry into the motel room created a dangerous situation which justified entry. See United States v. Aquino, 836 F.2d 1268, 1271 (10th Cir. 1988) (stating that "[w]hen police seek to enter a home without a warrant, the government bears the burden of proving that sufficient exigency exists"). The government contends it would have been "dangerous, if not downright foolhardy" for the officers to remain outside the room "not knowing where Ms. Ables was going or what she [was] going to do once she got there." Aple. Br. at 15. However, there is no evidence in the record that the officers had reason to believe Ables was violent or willing to use a gun or that the officers had to enter the room as a result. Zogmaister was wearing long

-2-

underwear and was not carrying a gun when he answered the door. Neither Zogmaister nor Ables made any threatening gesture. Although a confidential informant had told officers there was a gun in the motel room, there was no evidence presented at the suppression hearing regarding the informant's background or history of reliability as an informant. See United States v. Avery, 295 F.3d 1158, 1167 (10th Cir. 2002) (criminal history and history of reliability as informant are two factors to be considered in determining whether probable cause is established). Moreover, there is no indication in the record that the informant suggested that either Zogmaister or Ables was likely to use the gun if confronted by police. I agree with Judge Lucero that it appears the officers safely could have avoided the doorway (the so-called "funnel of fire") instead of rushing through it.