Afton CALLAHAN, Plaintiff–Appellant,

v.

MILLARD COUNTY; The Central Utah Narcotics Task Force; Sevier County; Piute County; Mt. Pleasant City; Wayne County; Richfield City; Salina City; Gunnison City; Ephraim City; Cordell Pearson, in his official and individual capacity; Marty Gleave, in his official and individual capacity; Clark Thomas in his official and individual capacity; Dwight Jenkins, in his official and individual capacity; Jeffrey Whatcott, in his official and individual capacity; and John Does I–IX in their official and individual capacities, Defendants–Appellees.

No. 06–4135.

United States Court of Appeals, Tenth Circuit.

July 16, 2007.

---

James K. Slavens, Fillmore, UT, for Plaintiff–Appellant.

Peter Stirba (Barbara L. Townsend and Meb W. Anderson with him on the brief), Stirba & Associates, Salt Lake City, UT, for Defendants–Appellees.

Before KELLY and EBEL, Circuit Judges, and MURGUIA,* District Judge.

* The Honorable Carlos Murguia, District Judge, United States District Court for the

MURGUIA, District Judge.

In this civil rights action, Plaintiff–Appellant Afton Callahan appeals from the district court's grant of summary judgment in favor of the numerous Defendant–Appellees. The district court held that the individual officers were entitled to qualified immunity because Mr. Callahan did not establish that the officers violated a clearly established right. Holding that the district court was correct in its determination that Mr. Callahan's constitutional rights were violated, but incorrect in its determination that these rights were not clearly established, we reverse in part and remand.

## Background

This appeal evolves from a police raid of Mr. Callahan's home on March 19, 2002. Earlier in the day, a confidential informant—who assisted the Central Utah Narcotics Task Force after being charged with possession of methamphetamine—saw Mr. Callahan and discussed a potential sale of methamphetamine later that day. The confidential informant then informed an officer of the task force of the conversation.

According to the findings of the district court, the confidential informant began that evening by drinking "between six to eight beers in three hours." He then went to Mr. Callahan's home, where he "ingested or tasted a sample of the methamphetamine." After establishing that he could purchase methamphetamine that evening, the confidential informant left Mr. Callahan's home to report the plan of purchasing a gram of methamphetamine for $100 to the task force.

During their conversations with the informant, the officers learned that he was intoxicated. Concerned about his competency, the officers supplied the confidential informant with coffee and monitored him. They were unaware that he also had ingested methamphetamine.

Despite the confidential informant's condition, the officers continued with the planned drug transaction. They wired the confidential informant, gave him a marked $100 bill, and worked out a signal for him to give the officers once the exchange was completed. The officers then drove the confidential informant to Mr. Callahan's home.

Inside the home, the confidential informant asked Mr. Callahan for methamphetamine. Mr. Callahan retrieved a quantity of drugs. In exchange for a portion of the quantity, the confidential informant gave Mr. Callahan the marked bill. After the deal was completed, the confidential informant gave a variation of the pre-arranged signal to the task force officers.

Hearing the signal, the officers entered Mr. Callahan's home through a porch door. Once inside, they ordered the confidential informant, Mr. Callahan, and two other individuals to the floor. During their entry, the officers saw Mr. Callahan drop a plastic bag, which they later confirmed contained methamphetamine. After the four persons were on the floor, the officers conducted a protective sweep of the home. The Utah Court of Appeals later determined that Mr. Callahan consented to the protective sweep.

As a result of the search of Mr. Callahan and his home, the officers found evidence of a drug sale and possession. On the confidential informant, they found a small bag of methamphetamine. On Mr. Callahan, they found the marked bill. In Mr. Callahan's home, they found drug syringes. The officers did not have an arrest or

District of Kansas, sitting by designation.

search warrant at any time during these events.

Based on this evidence, Mr. Callahan was charged with possession and distribution of methamphetamine. The trial court found that the evidence was admissible because the existence of exigent circumstances made the search reasonable despite the absence of a warrant. The Utah Court of Appeals reversed this decision and Mr. Callahan's subsequent conviction. Notably, the Utah Attorney General's office conceded on appeal that no exigent circumstances existed, instead arguing that the evidence would have been discovered inevitably. The court of appeals disagreed and applied the Attorney General's concession that there were no exigent circumstances.

Applying the ruling of the Utah Court of Appeals, Mr. Callahan filed claims in the United States Court for the District of Utah. Mr. Callahan alleged that the actions of the task force violated his constitutional rights under the Fourth and Fourteenth Amendments. Additionally, Mr. Callahan brought claims against municipalities for failure to supervise the task force and several state law claims.

On matters not on appeal, the district court dismissed Mr. Callahan's claims against the municipalities because Mr. Callahan did not show any official policy or custom related to the actions of the task force. Combined with the dismissal of the claims against the task force under qualified immunity—as later discussed—the district court declined to exercise jurisdiction over Mr. Callahan's state law claims. This closed Mr. Callahan's case.

Regarding the claims against the task force, the district court dismissed the claims because it found that qualified immunity shielded the officers. In so doing, it found that despite an assumption that the task force violated Mr. Callahan's con-stitutional rights, those constitutional rights were not clearly established. Specifically, the district court examined the application of the "consent-once-removed" doctrine, finding that although three circuit courts have upheld the doctrine, the recent Supreme Court decision in *Georgia v. Randolph,* 547 U.S. 103, 126 S.Ct. 1515, 164 L.Ed.2d 208 (2006), allowed the district court to assume Mr. Callahan's constitutional rights were violated. On the other hand, the approval of the doctrine by three circuit courts prevented the district court from finding that those rights were clearly established.

On appeal, Mr. Callahan contends that summary judgment should not have been granted based on qualified immunity derived from the "consent once removed" doctrine. This argument consists of two components. First, from Mr. Callahan's perspective, it is clear that the actions of the task force violated his constitutional rights under the Fourth Amendment. Second, Mr. Callahan contends that because Tenth Circuit law requires exceptions to the warrant requirement of the Fourth Amendment be well delineated and carefully drawn, the adoption of the doctrine by other circuits is irrelevant.

### Discussion

When reviewing summary judgment orders based on qualified immunity, the approach differs from other summary judgment decisions. *Cortez v. McCauley,* 478 F.3d 1108, 1114 (10th Cir.2007). Once a qualified immunity defense is asserted, the burden shifts to the plaintiff. First, the plaintiff must "establish that the defendant violated a constitutional right." *Id.* (citing *Reynolds v. Powell,* 370 F.3d 1028, 1030 (10th Cir.2004)). If the plaintiff fails to satisfy this initial requirement, the court's inquiry ends. *Cortez,* 478 F.3d at 1114 ("If no constitutional right would

have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity.") (quoting *Saucier v. Katz*, 533 U.S. 194, 201, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001)). If the plaintiff establishes that a constitutional right was violated, then the plaintiff must also show that the violated right was clearly established. *Cortez*, 478 F.3d at 1114. Whether the right was clearly established is examined under the "specific context of the case, not as a broad general proposition." *Id.* (quoting *Saucier*, 533 U.S. at 201, 121 S.Ct. 2151). "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation." *Id.* If reasonable officers would not have been aware of the clearly unlawful nature of their actions, qualified immunity applies and summary judgment would be appropriate. *Id.* (citing *Malley v. Briggs*, 475 U.S. 335, 341, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986)).

■■■ Even under this framework for analyzing qualified immunity, it remains that a district court's determination of qualified immunity is a question of law that we review de novo. *Cortez*, 478 F.3d at 1115 (citing *Bisbee v. Bey*, 39 F.3d 1096, 1099 (10th Cir.1994)). Summary judgment is appropriate only "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). "We review the evidence in the light most favorable to the nonmoving party." *Cortez*, 478 F.3d at 1115.

I. The actions of the Task Force violated Mr. Callahan's constitutional rights.

The Fourth Amendment protects "the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. When examining a search or seizure, the central question is whether the actions were reasonable. *United States v. McCullough*, 457 F.3d 1150, 1163 (10th Cir.2006) (citing *Illinois v. McArthur*, 531 U.S. 326, 330, 121 S.Ct. 946, 148 L.Ed.2d 838 (2001); *Texas v. Brown*, 460 U.S. 730, 739, 103 S.Ct. 1535, 75 L.Ed.2d 502 (1983)). Courts continually have viewed the warrantless entry into a house as presumptively unreasonable. *Brigham City v. Stuart*, —— U.S. ——, 126 S.Ct. 1943, 1947, 164 L.Ed.2d 650 (2006); *United States v. Walker*, 474 F.3d 1249, 1252 (10th Cir.2007) ("It is a basic principle of Fourth Amendment law that searches and seizures inside a home without a warrant are presumptively unreasonable.") (noting that the sentence is a quotation from *Payton v. New York*, 445 U.S. 573, 586, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980)); *Galindo v. Town of Silver City*, 127 Fed.Appx. 459, 465 (10th Cir.2005) (applying this in the context of qualified immunity). This presumption results from the understanding that "the home is entitled to the greatest Fourth Amendment protection." *United States v. Najar*, 451 F.3d 710, 712–13 (10th Cir.2006) (citing *Payton*, 445 U.S. at 585, 100 S.Ct. 1371 ("physical entry of the home is the chief evil against which the wording of the Fourth Amendment is directed"); *Kyllo v. United States*, 533 U.S. 27, 31, 121 S.Ct. 2038, 150 L.Ed.2d 94 (2001) ("At the very core of the Fourth Amendment stands the right of a man to retreat into his own home and there be free from unreasonable governmental intrusion. With few exceptions, the question whether a warrantless search of a home is reasonable and hence constitutional must be answered no.")).

■■ This presumption that a warrantless search of a house is unreasonable can

be overcome in certain circumstances. *Walker*, 474 F.3d at 1252 (citing *Coolidge v. New Hampshire*, 403 U.S. 443, 474–75, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971)). These circumstances require the government actors to demonstrate that the search "falls within one of a carefully defined set of exceptions based on the presence of 'exigent circumstances.'" *Id.* (quoting *Coolidge*, 403 U.S. at 474–75, 91 S.Ct. 2022); *United States v. Sawyer*, 441 F.3d 890, 893–94 (10th Cir.2006) ("It is well settled under the Fourth and Fourteenth Amendments that a search conducted without a warrant issued upon probable cause is *per se* unreasonable subject to only a few specifically established and well-delineated exceptions."); *Fuerschbach v. Sw. Airlines Co.*, 439 F.3d 1197, 1203 (10th Cir.2006) (discussing these exceptions in the context of qualified immunity). The exceptions based on exigent circumstances adopted by the Supreme Court include the hot pursuit of a fleeing felon, the imminent destruction of evidence, the need to prevent a suspect's escape, or the risk of danger to police officers or other people inside or outside the home. *United States v. Thomas*, 372 F.3d 1173, 1177 (10th Cir.2004) (citing *Minnesota v. Olson*, 495 U.S. 91, 100, 110 S.Ct. 1684, 109 L.Ed.2d 85 (1990)). Additional factors in analyzing the exceptions based on exigent circumstances are that the circumstance may not be "subject to police manipulation or abuse," or "motivated by an intent to arrest and seize evidence." *United States v. Zogmaister*, 90 Fed.Appx. 325, 330–31 (10th Cir.2004) (citing *United States v. Aquino*, 836 F.2d 1268, 1272 (10th Cir. 1988); *United States v. Smith*, 797 F.2d 836, 840 (10th Cir.1986)).

Even with these additional factors, the central question remains whether the search was reasonable. The focus simply shifts to whether "'the exigencies of the situation' make the needs of law enforcement so compelling that the warrantless search is objectively reasonable under the Fourth Amendment." *Brigham City*, 126 S.Ct. at 1947 (quoting *Mincey v. Arizona*, 437 U.S. 385, 393–94, 98 S.Ct. 2408, 57 L.Ed.2d 290 (1978)). Thus, to find that a new exception is warranted requires a balancing of private interests and unique public safety concerns. *Fuerschbach*, 439 F.3d at 1203.

It is undisputed that the task force officers entered Mr. Callahan's house without a warrant. Presently, they do not argue that an established exception based on exigent circumstances made this entry reasonable. Instead, the officers ask this Circuit to join other circuits in their approval of the "consent-once-removed" doctrine.

The "consent-once-removed" doctrine applies when an undercover officer enters a house at the express invitation of someone with authority to consent, establishes probable cause to arrest or search, and then immediately summons other officers for assistance. *United States v. Pollard*, 215 F.3d 643, 648 (6th Cir.2000); *United States v. Diaz*, 814 F.2d 454, 459 (7th Cir.1987); *United States v. Bramble*, 103 F.3d 1475, 1478 (9th Cir.1996). The Sixth and Seventh Circuits have broadened this doctrine to grant informants the same capabilities as undercover officers. *See United States v. Paul*, 808 F.2d 645, 648 (7th Cir.1986); *United States v. Yoon*, 398 F.3d 802, 807 (6th Cir.2005).

■■ We find the distinctions between an officer and an informant summoning additional officers to be significant. Had the person inside Mr. Callahan's home been an undercover officer, no extension of our case law would be necessary. Mr. Callahan would have consented to opening his home to the police. Consent is a well-established method of conducting a reasonable search, despite lacking a warrant.

*United States v. Ringold,* 335 F.3d 1168, 1174 (10th Cir.2003) ("It has long been established that an officer may conduct a warrantless search consistent with the Fourth Amendment if the challenging party has previously given his or her voluntary consent to that search."). Tenth Circuit precedent permits the police to use deception to gain such consent. *See Pleasant v. Lovell,* 876 F.2d 787, 802 (10th Cir.1989). *But see Butler v. Compton,* 158 Fed.Appx. 108, 111 (10th Cir.2005) (citing Sixth Circuit case law for the statement "[t]o be valid, however, the consent must be 'unequivocally, specifically, and intelligently given . . .' [m]oreover, the consent must be 'uncontaminated by duress, coercion, or trickery.'"). Once lawfully inside the home, an officer may effect a warrantless arrest that is supported by probable cause. *United States v. Cruz–Mendez,* 467 F.3d 1260, 1269 (10th Cir.2006). We have never drawn a constitutional distinction between an entry or search by an individual police officer and an entry or search by several police officers. Thus, the consent granted to the hypothetical undercover officer would have covered additional backup officers without any need for additional exceptions to the warrant requirement.

On the other hand, the invitation of an informant into a house who then in turn invites the police, which are the present facts, would require an expansion of the consent exception. In this context, the person with authority to consent never consented to the entry of police into the house. Other courts have overcome this distinction by noting that a state may grant the power to arrest to the police as well as its citizens, and if the informant has the power to arrest, then an informant must be capable of summoning the police. *Yoon,* 398 F.3d at 810–11. This logic is unconvincing. That a citizen has the power to arrest does not grant the citizen all of the powers and obligations of the police as

agents of the state. *Cf. Arnsberg v. United States,* 757 F.2d 971, 979 (9th Cir.1985) (law enforcement officers have "obligations, such as the duty to execute warrants, which private citizens lack; those obligations make the law of the citizen arrests an inappropriate instrument for determining FTCA liability"); *Caban v. United States,* 728 F.2d 68, 73–74 (2d Cir. 1984) (immigration officers have different privileges and duties than private individuals, and therefore citizen's arrest statute does not apply to such officers); *United States v. Hillsman,* 522 F.2d 454, 461 (7th Cir.1975) (discussing the differences between a private citizen's right to make an arrest and that of a police officer). These distinct obligations and powers must also be reflected in a distinction between inviting a citizen who may be an informant into one's house and inviting the police into one's house.

The officers also ask this court to adopt the "consent-once-removed" doctrine based on policy considerations. They argue that without this doctrine law enforcement will be severely hampered in its pursuit of drug traffickers because the use of informants is vital, and requiring officers to obtain a warrant whenever an informant was in a home would jeopardize personal safety and cause delays. This argument fails for two reasons. First, this contradicts the nature of the exceptions based on exigent circumstances requiring that the police may not manipulate or abuse the circumstances creating the exigency. *Zogmaister,* 90 Fed.Appx. at 330 (citing *Aquino,* 836 F.2d at 1272). Second, as recently restated by the Supreme Court in *Georgia v. Randolph,* "[a] generalized interest in expedient law enforcement cannot, without more, justify a warrantless search." 547 U.S. 103, 126 S.Ct. 1515, 1524 n. 5, 164 L.Ed.2d 208 (2006); *Coolidge,* 403 U.S. at 481, 91 S.Ct. 2022 ("The warrant require-

ment . . . is not an inconvenience to be somehow 'weighed' against the claims of police efficiency.")

Thus, while our case law would support a holding that the Fourth Amendment allows an undercover officer to summon backup officers within a home after that officer has been invited with consent, neither the case law nor a rational extension of the case law would support including officers summoned by an informant within a home. Based on this, we hold that entering Mr. Callahan's home based on the invitation of an informant and without a warrant, direct consent, or other exigent circumstances, the task force officers violated Mr. Callahan's constitutional rights under the Fourth Amendment.

## II. Mr. Callahan's rights were clearly established

■ Having established that Mr. Callahan's rights were violated, we now turn to whether these rights were clearly established. For a right to be clearly established, "there must be a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other circuits must have found the law to be as the plaintiff maintains." *Cortez,* 478 F.3d at 1114–15 (citing *Medina v. City of Denver,* 960 F.2d 1493, 1498 (10th Cir.1992)). This does not require a plaintiff to cite a case holding that the specific conduct at issue is unlawful, but rather plaintiff must show that the unlawfulness of the action was apparent. *Jones v. Hunt,* 410 F.3d 1221, 1229 (10th Cir.2005).

■ In this case, the relevant right is the right to be free in one's home from unreasonable searches and arrests. The Supreme Court has repeatedly emphasized the importance of this right, stating "[o]ver and again this Court has emphasized that the mandate of the Fourth Amendment requires adherence to judicial processes

. . . and that searches conducted outside of the judicial process, without prior approval by judge or magistrate, are per se unreasonable under the Fourth Amendment— subject only to a few specifically established and well-delineated exceptions." *Katz v. United States,* 389 U.S. 347, 357, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967) (citations omitted). Thirty years after *Katz,* but before the raid on Mr. Callahan's home, the Supreme Court again emphasized the long history of this right. *Wilson v. Layne,* 526 U.S. 603, 610–11, 119 S.Ct. 1692, 143 L.Ed.2d 818 (1999) ("[T]he 'overriding respect for the sanctity of the home that has been embedded in our traditions since the origins of the Republic' meant that absent a warrant or exigent circumstances, police could not enter a home to make an arrest.") (citations omitted). Although the Supreme Court decided *Groh v. Ramirez* after the present events occurred, the Court's analysis in rejecting another exception to the warrant requirement is appropriate, stating "[n]o reasonable officer could claim to be unaware of the basic rule, well established by our cases, that, absent consent or exigency, a warrantless search of the home is presumptively unconstitutional. . . . Because not a word in any of our cases would suggest to a reasonable officer that this case fits within any exception to that fundamental tenet, petitioner is asking us, in effect, to craft a new exception. Absent any support for such an exception in our cases, he cannot reasonably have relied on an expectation that we would do so." 540 U.S. 551, 564, 124 S.Ct. 1284, 157 L.Ed.2d 1068 (2004).

This Circuit has also long adopted the view that warrantless entries into a home are per se unreasonable unless they satisfy the established exceptions. *See e.g., Franz v. Lytle,* 997 F.2d 784, 787 (10th Cir.1993) (referring to this limitation as a "cardinal

principle" of the Fourth Amendment). Although the officers might argue that their entry fell within the "consent" exception to the warrant requirement, Tenth Circuit law provides that a mere transient guest, without a "substantial interest in or common authority over the property," cannot consent to the entry of others. *United States v. Falcon,* 766 F.2d 1469, 1474 (10th Cir.1985).

The district court held that the right was not clearly established because other circuits have approved of the "consent-once-removed" doctrine. From the district court's perspective, this gave the officers a "reasonable argument" that their actions were justified until this Circuit or the Supreme Court rejected the "consent-once-removed" doctrine. This approach misreads a plaintiff's burden in showing that a right is clearly established. While case law from other circuits is relevant in the analysis, it relates to whether "the clearly established weight of authority from other circuits must have found the law to be as the plaintiff maintains." *Cortez,* 478 F.3d at 1114–15. Here, the Supreme Court and the Tenth Circuit have clearly established that to allow police entry into a home, the only two exceptions to the warrant requirement are consent and exigent circumstances. The creation of an additional exception by another circuit would not make the right defined by our holdings any less clear. Moreover, at the time of these events only the Seventh Circuit had applied the "consent-once-removed" doctrine to a civilian informant. *See United States v. Paul,* 808 F.2d 645, 648 (7th Cir.1986). The precedent of one circuit cannot rebut that the "clearly established weight of authority" is as the Tenth Circuit and the Supreme Court have addressed it.

Here, the officers knew (1) they had no warrant; (2) Mr. Callahan had not con-sented to their entry; and (3) his consent to the entry of an informant could not reasonably be interpreted to extend to them. They do not argue on appeal that exigent circumstances justified their entry. Thus, "reasonable officers could [not] have believed that" their warrantless entry into Mr. Callahan's home "was lawful, in light of clearly established law and the information the officers possessed." *Wilson,* 526 U.S. at 615, 119 S.Ct. 1692 (utilizing this phrasing in defining the "appropriate level of specificity" for a qualified immunity analysis). Although other circuits might disagree, Tenth Circuit law governed the reasonableness of the officers' beliefs in this case. The officers are not protected by qualified immunity.

AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.

PAUL KELLY, JR., Circuit Judge, dissenting.

Afton Callahan was arrested by the Central Utah Narcotics Task Force (the "Task Force") for distribution and possession of methamphetamine following a warrantless entry into his residence. The warrantless entry occurred after a confidential informant consensually entered Mr. Callahan's residence, purchased methamphetamine using funds provided by the Task Force, and gave what appeared to the officers to be a pre-arranged signal indicating that the drug deal had come to fruition. After successfully challenging the legality of the warrantless entry in Utah courts, *see State v. Callahan,* 93 P.3d 103 (Utah Ct.App. 2004), Mr. Callahan brought a civil rights action under 42 U.S.C. § 1983 against individual members of the Task Force, the Task Force itself, and several counties in Utah (collectively "Defendants").

On summary judgment, the district court granted Defendants qualified immunity. Today, the court reverses, holding

that (1) the "consent once removed" doctrine does not justify officers' warrantless entry into a residence, at least where the individual gaining initial, consensual entry is a confidential informant, and (2) the law was clearly established that law enforcement may not enter a residence without a warrant in order to assist a confidential informant—present in the home consensually and possessing probable cause—in effectuating an arrest. Because these holdings unnecessarily part company with at least two (and arguably three) of our sister circuits and are contrary to longstanding Fourth Amendment and qualified immunity principles, I respectfully dissent.

In order to overcome a qualified immunity defense, a plaintiff asserting a cause of action under § 1983 must demonstrate that (1) the defendant's actions violated a federal constitutional or statutory right, and (2) the right alleged to have been violated was clearly established at the time of the conduct at issue.[1] *Saucier v. Katz,* 533 U.S. 194, 201, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001).

At the highest level of abstraction, the right at issue is the Fourth Amendment "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. Amend. IV. The Supreme Court has interpreted the Fourth Amendment to require government agents to obtain a warrant before entering a residence for purposes of search or arrest. *See Welsh v. Wisconsin,* 466 U.S. 740, 748,

104 S.Ct. 2091, 80 L.Ed.2d 732 (1984). The warrant requirement, however, is nowhere near absolute; there are exceptions, though they are "few in number and carefully delineated." *United States v. United States Dist. Court,* 407 U.S. 297, 318, 92 S.Ct. 2125, 32 L.Ed.2d 752 (1972). "[O]ne of the specifically established exceptions to the requirements of both a warrant and probable cause is a search that is conducted pursuant to consent" freely and voluntarily given. *Schneckloth v. Bustamonte,* 412 U.S. 218, 219, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973). This exception results from the recognition that the primary purpose of the Fourth Amendment—"protection of the privacy of the individual, his right to be let alone," *Davis v. United States,* 328 U.S. 582, 587, 66 S.Ct. 1256, 90 L.Ed. 1453 (1946)—is forfeited when a homeowner freely allows government agents inside.

Thus, it is abundantly clear that had one or more members of the Task Force gained consent to enter Mr. Callahan's home, there would be no Fourth Amendment violation. *See United States v. Cruz–Mendez,* 467 F.3d 1260, 1265–66 (10th Cir.2006). As the court notes, the same would be true had the Task Force members gained consent under the guise of being plain-clothed citizens looking to purchase methamphetamine. *See Lewis v. United States,* 385 U.S. 206, 211, 87 S.Ct. 424, 17 L.Ed.2d 312 (1966). Analogously, the confidential informant's consensual entry was not a violation of the Fourth Amendment, despite the fact that Mr. Cal-

---

**1.** Despite heated debate among the Justices on the matter, the Supreme Court has explained that the lower federal courts are obliged to consider the qualified immunity questions in turn and may not skip the first step—whether a constitutional or statutory right was violated—simply because the case can be disposed of on the second. *See Saucier,* 533 U.S. at 201, 121 S.Ct. 2151. The district court below clearly violated this command when it assumed a constitutional violation and nonetheless held in Defendants' favor on the second *Saucier* step. Disregarding the district court's failure, the majority faithfully fulfills its obligation "to set forth principles which will become the basis for a holding that a right is clearly established," *id.*; unfortunately, it arrives at an erroneous conclusion.

lahan had no idea he was acting as a government agent at the time. *See United States v. Lowe,* 999 F.2d 448, 450–51 (10th Cir.1993).

What was unclear in this circuit, at least until today, was whether Mr. Callahan's consent to the confidential informant coupled with the subsequent drug transaction so eroded his legitimate expectation of privacy that officers could enter his residence without a warrant in order to effectuate his arrest. The court answers that question in the negative, invalidating the consent once removed doctrine where confidential informants, rather than full-fledged officers, are involved. I, however, would draw the line elsewhere.

Under the doctrine of consent once removed, law enforcement officials may enter a residence without a warrant if the following conditions are met:

> The undercover agent or informant: 1) entered at the express invitation of someone with authority to consent; 2) at that point established the existence of probable cause to effectuate an arrest or search; and 3) immediately summoned help from other officers.

*United States v. Pollard,* 215 F.3d 643, 648 (6th Cir.2000) (quoting *United States v. Akinsanya,* 53 F.3d 852, 856 (7th Cir. 1995)). The name "consent once removed" is somewhat of a misnomer, however, because the doctrine depends on more than consent alone. *See United States v. Yoon,* 398 F.3d 802, 809–10 (6th Cir.2005) (concurring op.). Rather, the doctrine requires both a valid consensual entry— which alleviates the warrant requirement—and a concomitant destruction of the homeowner's legitimate expectation of privacy—which allows officers to enter. *Id.*; *see also United States v. Paul,* 808 F.2d 645, 648 (7th Cir.1986) ("[T]he interest in the privacy of the home ... has been fatally compromised when the owner admits a confidential informant and proudly displays contraband to him."). When one gives consent for another individual to enter his home in order to buy or sell narcotics, he not only assumes the risk that the person is an undercover government agent, but also that the individual will later testify to his observations, that he will attempt to effectuate an arrest on-the-spot, or that he will take some of the contraband and hand it over to the police. *Paul,* 808 F.2d at 648. Given the assumption of these risks, the marginal risk that an individual will instead invite law enforcement officials to assist in an on-the-spot arrest "is too slight to bring the requirement of obtaining a warrant into play."[2] *Id.*; *see also United States v. Rubio,* 727 F.2d 786, 797 (9th Cir.1983).

The crucial question, then, is whether a homeowner's legitimate expectation of privacy is any greater when he allows a confidential informant into his home rather than a full-fledged officer. The court answers that question with a resounding "yes," but I fail to see the difference in the two situations. The court draws the line at police officers because "the person with authority to consent never consented to the entry of police into the house" when only a confidential informant is admitted and "the power to arrest does not grant the citizen all of the powers and obligations of the police as agents of the state." Ct. Op. at 897.

2. The court misconceives the conceptual underpinnings of the consent once removed doctrine, suggesting the doctrine is premised upon the existence of two consents—one from the homeowner to the confidential informant and one from the confidential informant to the police. Viewed in that light, however, the doctrine could not operate as to either confidential informants or police officers. Police officers have just as little authority to subsequently admit other officers into a home as confidential informants do.

While it is technically correct that Mr. Callahan never consented to the entry of police, no one ever consents to the entry of police in these undercover situations; they instead consent to the entry of someone who *might* be the police (an undercover officer), or as in this case, someone who *might* be a government agent (a confidential informant). So long as an invitation to enter is extended to a government agent (even unknowingly), the pertinent issue is not the type of government agent allowed in, but the consequence of that invitation, combined with the subsequent sale of narcotics, on a resident's reasonable expectation of privacy. And the only principled resolution of that issue is to hold that, no matter what type of government agent is allowed in, any previously existent legitimate expectation of privacy is abandoned.

I am similarly unconvinced by the court's reliance on the distinction between those powers possessed by police officers and those possessed by other citizens. The confidential informant in this case was doubtless a government agent for Fourth Amendment purposes. "In deciding whether a private person has become an ... agent of the government, two important inquiries are: 1) whether the government knew of and acquiesced in the intrusive conduct, and 2) whether the party performing the search intended to assist law enforcement efforts or to further his own ends." *Pleasant v. Lovell,* 876 F.2d 787, 797 (10th Cir.1989). In this case—as is the same in nearly all cases involving undercover stings utilizing confidential informants—law enforcement knew of the confidential informant's intrusive actions beforehand, and those actions were undertaken with the purpose of assisting the police.

There is also no denying that citizens (including confidential informants) in Utah, and nearly every other state, possess the power to arrest another individual who commits a felony in their presence. *See* Utah Code Ann. § 77-7-3 (2003). To be sure, the ordinary citizen does not possess *all* the powers and obligations attendant to being a police officer. But once that citizen becomes a government agent and embarks on a joint venture with the police, as the confidential informant in this case did, both he and the officers for whom he works face civil liability for any of his actions later deemed unconstitutional. *See Pleasant,* 876 F.2d at 798–99. Police have no greater obligation than to respect citizens' constitutional rights, but that obligation carries over to the confidential informant once he agrees to work closely with the government and is imbued with state action. This fact distinguishes confidential informants from other citizens and, combined with the citizens' arrest power, renders application of the consent once removed doctrine to them abundantly reasonable.

Finally, the line the court draws creates odd results. Although police officers themselves may enter a residence to assist a fellow officer in effectuating an arrest, other government agents—such as agents of the Internal Revenue Service—might not have the same capacity. I fear future cases will turn on how closely the "powers and obligations" of the government agent in question resemble those of the classic police officer, rather than on Fourth Amendment reasonableness, *see Illinois v. Rodriguez,* 497 U.S. 177, 183–85, 110 S.Ct. 2793, 111 L.Ed.2d 148 (1990).[3]

**3.** Despite the district court's suggestion to the contrary, the Supreme Court's recent decision in *Georgia v. Randolph,* 547 U.S. 103, 126 S.Ct. 1515, 164 L.Ed.2d 208 (2006), does not affect the viability of the consent once removed doctrine. In that case, the Court held that police may not reasonably enter premises under dual control when one occupant is

Because I see no principled distinction between police officers and other government agents, including confidential informants, in regard to a resident's legitimate expectation of privacy following consensual entry, I would join the Sixth and Seventh Circuits in clearly extending the consent once removed doctrine to confidential informants. Thus, I would hold that no constitutional violation occurred in this case and that qualified immunity was properly granted.

Although the extension of the consent once removed doctrine to confidential informants is an issue on which reasonable minds might differ, there is no doubt that the right at issue was not clearly established at the time the Task Force acted. "[T]he affirmative defense of qualified immunity ... protects all but the plainly incompetent or those who knowingly violate the law." *Medina v. Cram*, 252 F.3d 1124, 1127 (10th Cir.2001) (internal quotation marks omitted). To be clearly established, the contours of a right "must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Hope v. Pelzer*, 536 U.S. 730, 739, 122 S.Ct. 2508, 153 L.Ed.2d 666 (2002). Moreover, the clearly established law inquiry is an objective one, *see Anderson v. Creighton*, 483 U.S. 635, 641, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987), and "must be undertaken in light of the specific context of the case, not as a broad general proposition." *Saucier*, 533 U.S. at 201, 121 S.Ct. 2151. A right is "clearly established" if Supreme Court or Tenth Circuit case law exists on point or if the "clearly established weight of authority from other circuits" found a constitutional violation from similar actions. *Murrell v. Sch. Dist. No. 1*, 186 F.3d 1238, 1251 (10th Cir.1999).

Properly characterized, the right at issue in this case is not simply the right to be free from unreasonable searches and seizures. Instead, it is the right to be free from the warrantless entry of police officers into one's home to effectuate an arrest after one has granted voluntary, consensual entry to a confidential informant and undertaken criminal activity giving rise to probable cause. As the district court observed, no Supreme Court or Tenth Circuit decision has ever granted or even discussed that right. The court is no more successful in identifying such a decision. Instead, it relies upon cases holding that a warrantless search of a home is per se unreasonable unless officers gain consent or exigent circumstances exist.[4] *See* Ct. Op. at 897–99 (citing *Katz, Wilson, Groh, Franz*, and *Falcon*). The court's approach is flawed, however, because it characterizes the right in overly broad terms and begs the question—what is the effect on a resident's legitimate expectation of privacy where the consent exception to the warrant requirement applies? Because neither the Supreme Court nor the Tenth Circuit has previously addressed this issue in the context of a warrantless

---

physically present and refuses admittance. *Id.* at 1519. Beyond the fact that *Randolph* may have slightly altered the circumstances under which a confidential informant or undercover officer may enter and remain in a residence under the first prong of the consent once removed doctrine, it is inapposite because it does not address whether, once valid consent is granted to a government agent and probable cause of criminal activity is established, a search is rendered unreasonable if

additional officers enter a residence to help effectuate an arrest.

**4.** *United States v. Falcon*, 766 F.2d 1469 (10th Cir.1985), relied upon by the court, discusses what is required for one to possess the power to grant consent, not the consequences of a proper grant of consent on a homeowner's legitimate expectation of privacy. *See id.* at 1474.

entry of officers where a confidential informant is involved, we must look to other circuits for guidance.

Prior to the events giving rise to this litigation, three circuits had issued opinions which could have led a reasonable officer to believe that a warrantless entry was legal in this case. First, the Seventh Circuit, in 1986, clearly held that the consent once removed doctrine applies equally where confidential informants are involved, relying on a reduced expectation of privacy. *See Paul*, 808 F.2d at 648. Second, the Sixth Circuit, in 2000, applied the consent once removed doctrine in a situation in which both an officer and a confidential informant were granted consent to enter and "*the informant* accompanying the officer immediately summoned the other officers for assistance." *Pollard*, 215 F.3d at 648–49 (emphasis added). Importantly, the Sixth Circuit stated that the consent once removed doctrine applies where "[t]he undercover agent *or informant*" consensually enters a residence, establishes probable cause, and immediately summons help. *See id.* at 648 (emphasis added). Finally, the Ninth Circuit, in 1996, explained that the consent once removed doctrine applies where "undercover agent[s]" are involved, *see United States v. Bramble*, 103 F.3d 1475, 1478 (9th Cir. 1996); and a reasonable officer could have believed the term "undercover agent[s]" includes confidential informants acting as government agents.

In sum, because neither the Supreme Court nor the Tenth Circuit has heretofore addressed the propriety of the consent once removed doctrine as applied to confidential informants, and the clear weight of authority from other circuits strongly suggested that the Task Force's actions in this case were legal, I would hold that the right at issue was not clearly established and

would affirm the grant of qualified immunity.